SAUNTMAN ET AL. v. MAXWELL ET AL.

[No. 18,818.   Filed June 27, 1899.   Rehearing denied Jan. 26, 1900.]

DRAINS.—*Drainage Law of 1889.—Constitutional Law.*—The drainage act of 1885 as amended in 1889 (Acts 1889, p. 285) is not void for uncertainty as violative of the provision of §20, article 4 of the Constitution that "Every act and joint resolution shall be plainly worded, avoiding as far as practicable the use of technical terms." *p. 119.*

SAME.—*Drainage Law of 1889.—Construction.*—The act of 1889 (Acts 1889, p. 285) amending the drainage law of 1885 was intended to apply to the drainage of country lands where no outlet was available without extraordinary labor and expense, except through the corporate limits of a city. *p. 119.*

SAME.—*Jurisdiction of Circuit Court.—Drainage Law of 1889.*—The legislature may give circuit courts jurisdiction over the matter of drainage in country and city conjointly, although previous exclusive jurisdiction was granted the common council over drainage within the corporate limits of cities. *p. 120.*

Sauntman *v.* Maxwell.

DRAINS.—*Jurisdiction.—Drainage Law of 1889.*— If the object of straightening a water course is to prevent the banks from washing, to protect a highway, to avoid the construction of a bridge, or the like, the boards of county commissioners have exclusive jurisdiction ; but if the object is the drainage of wet lands, and the improvement of the water course is merely a means to that end, the circuit court has jurisdiction under the drainage act of 1889. *p. 120.*

SAME.—*Petition.—Jurisdiction.—Drainage Law of 1889.*—A petition for drainage averring that numerous bodies of land, particularly described, will be benefited by the proposed drainage, that many highways and streets will be improved and benefited by the proposed drainage, that the public health will be promoted, and that the proposed results can most readily be accomplished by straightening and deepening the river and constructing lateral drains, and that construction of the drain is impracticable except by going through the corporate limits of a certain city, is sufficient, under the drainage law of 1889, without alleging the particular circumstances by reason of which the proposed drainage could not be accomplished without extraordinary labor and expense and in the best and cheapest manner, except by passing through the corporate limits of a city.  *pp. 120, 121.*

SAME.—*Remonstrance.—Drainage Law of 1889.*—Section two of the act of 1889 amending the drainage law of 1885, providing that a drainage petition shall be dismissed if two-thirds of the landowners remonstrate, does not repeal the proviso of section three of the original act that the remonstrants shall be resident landowners, but operates merely as an exception to the rule laid down in section three of the original act, and is applicable to a proceeding for drainage by country and city conjointly.  *pp. 121, 122.*

SAME.—*Remonstrance.—Drainage Law of 1889.*—There is no warrant to act under amended section two of the drainage law of 1885 as amended in 1889, providing that a drainage petition shall be dismissed if two-thirds of the landowners remonstrate, unless the court finds that the drainage cannot be accomplished without extraordinary labor and expense, and in the best and cheapest manner, except by passing through a city. *p. 122.*

SAME.—*Remonstrance.—Dismissal of Proceeding.*—The necessity for the drainage of country lands by means of a drain passing through the corporate limits of a city is a jurisdictional fact to be found by the court, and the dismissal of a drainage petition on a remonstrance signed by two-thirds of the resident owners, but less than two-thirds of all landowners affected, is equivalent to a finding that such necessity does not exist, and is not reviewable. *pp. 121–123.*

SAME.—*Remonstrance.—Grounds of Objection.*—As no grounds need be stated in a remonstrance against the construction of a drain under the act of 1885 as amended in 1889, several papers stating different

Sauntman *v.* Maxwell.

objections to the proposed drain, signed by remonstrators, may be put together, and all of the headings but one stricken out, and presented as one remonstrance.  *p. 123.*

DRAINS.—*Remonstrance.*—A remonstrance against the construction of a drain under the act of 1885 as amended in 1889 is not a pleading, and need not state facts sufficient to constitute a defense to the petition.  *p. 123.*

SAME.—*Remonstrance.—Withdrawal of Remonstrant.*—Under the drainage law of 1885 as amended in 1889 (Acts 1889, page 285) a period of ten days after the docketing of the cause is allowed for the filing of a remonstrance for the dismissal of the petition, and after the ten days have elapsed, the question for determination is whether or not the required number of landowners with proper qualifications were remonstrants at the expiration of the ten days' period, and no remonstrant can subsequently withdraw.  *p. 124.*

EVIDENCE.—*Offer to Prove.*—Available error cannot be predicated on the action of the court in refusing an offer to prove certain alleged facts, where the witness was not produced.  *pp. 124, 125.*

SAME.—*Expert Witness.*—The opinion of an expert witness as to whether a proposed drain could be accomplished without extraordinary labor and expense, without passing through the corporate limits of a city, must be based upon facts either admitted to be true, or assumed, or previously testified to by the witness.  *p. 126.*

SAME.—*Costs.—Dismissal of Petition.*—Remonstrants to a proposed drain are bound to testify in their own behalf without being subpœnaed, and the costs of the sheriff in serving subpœnaes upon them issued on the precipe of the remonstrants, should not be taxed against the petitioners on the dismissal of the petition at the cost of petitioners.  *p. 126.*

From the Jay Circuit Court.  *Affirmed.*

*W. H. Williamson, S. A. D. Whipple, A. C. Harris* and *J. R. Wilson,* for appellants.

*D. T. Taylor* and *O. H. Adair,* for appellees.

BAKER, J.—On September 10, 1896, appellants filed a petition for drainage under the act of 1885 as amended in 1889.  Acts 1885, p. 129; Acts 1889, p. 285, §5622 *et seq.* Burns 1894, §4273 *et seq.* Horner 1897.  The proposed drain would affect about 100,000 acres in Jay and Blackford counties and would pass through the corporate limits of the city of Portland.  The method to be employed was the straightening and deepening of the Salamonie river.

The petition named 2,763 persons whose lands would be affected, of whom 533 were nonresidents. Demurrer on the grounds that the court did not have jurisdiction of the subject-matter and that the petition did not state sufficient facts was overruled. On this, cross-error is assigned. Appellees filed a remonstrance signed by 1,499 landowners named in the petition and 186 who were admitted as parties. Appellants' motion to strike out this remonstrance was overruled. The court refused to allow appellants to file a verified pleading attacking the sufficiency of the remonstrance. The issues made by the petition and remonstrance were tried by the court and, upon proper request, a special finding of facts was made and conclusions of law were stated thereon. Appellants excepted to the conclusions of law. Judgment dismissing the petition was rendered. Appellants' motions for a *venire de novo* and for a new trial were overruled.

The determination of the questions presented depends mainly upon the meaning of section two as amended in 1889 and section three of the drainage act of 1885. Section two directs how and by whom the petition is to be made. Section three provides for filing the petition in the clerk's office, for giving notice, for docketing the cause after notice thereof, for the allowance of ten days after docketing in which landowners may object to the form of the petition and the competency of the drainage commissioners, and for a hearing of such objections at the end of the ten days. Next follows this proviso: "Provided, that if at this stage of the proceedings [within ten days after the cause is docketed] two-thirds in number of the landowners named as such in such petition, resident in the county or counties where the lands affected are situated, shall remonstrate in writing against the construction of such drain or ditch, such petition shall be dismissed at the cost of the petitioner." The part of section two, as adopted in 1885, necessary for consideration, reads: "Whenever any owner or owners of any separate and distinct tract or tracts of land which would be

benefited by the same drainage, which can not be accomplished in the best and cheapest manner without affecting other lands shall desire such drainage, he or they may apply for such drainage by petition to the circuit court or superior court of the county in which the lands of the petitioner or petitioners are situated." This part of section two was amended in 1889 so as to read: "Whenever any owner or owners of any separate and distinct tract or tracts of land *lying outside the corporate limits of any city or town in this State* which would be benefited by drainage, and which can not be accomplished *without extraordinary labor and expense as determined by the court: Provided, also, that where such drain passes through the corporate limits of such city or town, the same shall be located in, upon and along the streets or alleys thereof whenever the same may be practicable,* without affecting other lands shall desire such drainage, or (drainage) *which can not be accomplished in the best and cheapest manner without passing through the corporate limits of such city or town,* such owner or owners may apply for such drainage by petition to the circuit court or superior court of the county in which the lands of the petitioner or petitioners are situated." The first and third groups of italicized words were added as new matter. The second group was substituted, while the bill was pending in the Senate, for the words "in the best and cheapest manner". Senate Journal 1889, p. 362. At the end of the section, as amended in 1889, there was added: "Provided, that in all cases where such drain passes through the corporate limits of any city or town, as in this section provided, affecting the lands in such city or town, [if] two-thirds in number of the landowners named as such in such petition and representing or owning two-thirds of the lands affected by such drain in the county or counties where the lands affected are situated, shall remonstrate in writing against the construction of such drain or ditch, such petition shall be dismissed at the cost of the petitioners." Section two as

adopted in 1885 contained nothing of this nature, and the only provision for the dismissal of the petition if two-thirds of the landowners opposed the drainage was the proviso above quoted from section three.    The case of *Anderson v. Endicutt*, 101 Ind. 539, was decided April 8, 1885.    It held that the cities of this State had exclusive jurisdiction of the matter of drainage within their limits and that there was no authority for the construction of drains in cities by drainage commissioners under the direction of the circuit court.    The decision was made with reference to the circuit court drainage act of 1881 as amended in 1883.    §§4273-4284 R. S. 1881; Acts 1883, p. 173.    The act of 1885 repealed the act of 1881.    The part of section two of the act of 1885, above quoted, is identical with the corresponding part of section two of the act as adopted in 1881 and amended in 1883.    It is probable that the act of 1885 was amended in 1889 by reason of the *Anderson* decision.

Appellees, in support of their demurrer on the ground that the court did not have jurisdiction of the subject-matter, urge that the amendatory act of 1889 violates section 20 of article 4 of the Constitution, which reads:   "Every act and joint resolution shall be plainly worded, avoiding as far as practicable the use of technical terms."   No technical terms are used and the act is plainly worded.   The difficulty, so far as any exists, lies rather in the structure of the sentences.   But, by considering the act of 1885, the *Anderson* decision, and the new matter added by the amendatory act of 1889, it becomes plain that the object of the legislature of 1889 was to provide for drainage in an exceptional class of cases.   Prior to that time circuit courts had jurisdiction of drains that lay wholly in the country; cities had exclusive jurisdiction of drainage within their limits and might provide an outlet beyond their limits; but there was no provision for draining country lands in case no outlet was available, without extraordinary labor and expense, except through the corporate limits of a city.   The amendatory act of 1889 was obviously enacted to remedy this condition.

Appellees also contend that it was beyond the power of the legislature to give circuit courts jurisdiction over drains that would extend through cities. The previous exclusive jurisdiction of the common council over drainage within the corporate limits was granted by the legislature. That grant was subject to withdrawal or modification. Moreover, the matter of drainage in country and city conjointly never was within the jurisdiction of common councils. It was a new subject-matter, an exceptional situation that the legislature of 1889 discovered was not provided for by then existing statutes. It was within the legislature's discretion to lodge jurisdiction of this new matter where it saw fit.

Appellees insist that the court did not have jurisdiction because the petition disclosed that a river was to be improved, straightened and deepened. If the object of straightening a water course is to prevent the banks from washing, to protect a highway, to avoid the construction of a bridge, or the like, it is decided that the boards of county commissioners have exclusive jurisdiction. *Scruggs* v. *Reese*, 128 Ind. 399. But if the object is the drainage of wet lands and the improvement of the water course is merely a means to that end, the drainage act of 1885 gives the necessary power to the circuit courts. *Lipes* v. *Hand*, 104 Ind. 503. The petition avers that numerous bodies of land, particularly described, will be benefited by the proposed drainage; that many high-- ways and streets will be improved; that the public health will be promoted; and that the proposed results can most readily be accomplished by straightening and deepening the river and constructing lateral drains.

Appellees, in support of their demurrer on the ground that the petition does not state sufficient facts, argue that the petitioners should have alleged the particular circumstances by reason of which the proposed drainage could not be accomplished, without extraordinary labor and expense and in the best and cheapest manner, except by passing through the corporate limits of Portland. The averments

Sauntman *v.* Maxwell.

that public health will be promoted, highways improved, lands benefited, and that construction is impracticable except by going through the limits of the city, are averments of fact.   To set out the circumstances that would prove these allegations to be true, would be pleading evidence.

The main contention of appellants is that the conclusion of law on the special finding is wrong.   The court found that 2,763 landowners named in the petition were before the court; that 733 of these were nonresidents of Jay and Blackford counties; that of the 2,030 residents 1,639 were remonstrants against the improvement.   As a conclusion of law the court stated that the petition ought to be dismissed. There was no finding that the lands of the petitioners, who were and had to be owners of lands lying outside the limits of Portland, could not be drained, without extraordinary labor and expense and in the best and cheapest manner, except by putting the drain through the city.   It is manifest that the court, in determining the sufficiency of the remonstrance, acted under the provisions of section three of the act of 1885.   The claim of appellants is that the sufficiency of the remonstrance should have been determined by the proviso added to section two by the amendatory act of 1889. Prior to 1889 the proviso in section three governed all cases that could be brought under the act of 1885.   The proviso added to section two in 1889 does not repeal the proviso in section three; it operates merely as an exception to the general rule laid down in section three.   Section three provides for a dismissal of the petition if two-thirds of the resident landowners remonstrate.   Amended section two requires a dismissal only in case the improvement is opposed by two-thirds of the landowners, without regard to residence, who own or represent two-thirds of the lands affected.   Why the legislature thought this distinction proper or necessary is beyond the province of judicial inquiry.   But it was incumbent upon the petitioners to prove to the court that their case came within the exception.   If the remonstrance pro-

vided for in section three or in amended section two is over-
ruled, the matter of the proposed drainage is referred to the
drainage commissioners, and landowners thereafter are not
permitted to make objections to the proceedings except upon
the grounds of remonstrance to the report of the drainage
commissioners prescribed in section four. The court must
act upon the remonstrance for dismissal before the petition
is referred to the drainage commissioners. In so acting, the
court necessarily decides whether the sufficiency of the
remonstrance is to be determined by section three or
amended section two. There is no warrant to act under
amended section two unless the court finds that the drainage
can not be accomplished, without extraordinary labor and
expense and in the best and cheapest manner, except by pass-
ing through the city. The cases of *Anderson* v. *Baker*, 98
Ind. 587; *Heick* v. *Voight*, 110 Ind. 279; *Zigler* v. *Menges*,
121 Ind. 99, *Chandler* v. *Beal*, 132 Ind. 596; *Bonfoy* v.
*Goar*, 140 Ind. 292, and *Wilson* v. *Talley*, 144 Ind. 74, to
the effect that the question as to what route is best and
cheapest is wholly within the judgment of the drainage
commissioners and can not in the absence of fraud be liti-
gated on remonstrances against their report, apply merely
to the special location of the drain that has been described
in general terms in the petition. Manifestly it is not within
the discretion of the drainage commissioners to locate specif-
ically a drain other than the one generally described in the
petition. If a drain wholly in the country were petitioned
for, it would be without the purview of the amendatory act
of 1889; it would be a subject-matter fully covered by the
act of 1885 as originally passed; and the report of the drain-
age commissioners and the judgment of the court confirm-
ing the report, establishing a drain through a city, would be
void for want of jurisdiction over the subject-matter.
*Anderson* v. *Endicutt*, 101 Ind. 539. That a necessity
exists for the drainage of country lands by means of a drain
passing through the corporate limits of a city, is a jurisdic-

tional fact to be established by the petitioners; and, as the method of determination of the sufficiency of the remonstrance for dismissal depends upon the existence of the necessity, that jurisdictional fact must be shown on the hearing of the remonstrance. For the lack of such a finding, the conclusion of law is unassailable.

Appellants urge that the court erred in refusing to permit them to file a verified plea in abatement of the remonstrance. The plea shows that several papers, stating at the head different objections to the proposed drain, were circulated among the remonstrants; that these papers were put together by some unknown person and all of the headings stricken out but one, thereby causing without authority all the remonstrants except those signing the one paper to subscribe to grounds of objection other than those stated at the head of the papers they signed. As no grounds of objection need be stated in this sort of a remonstrance, the striking out of particular grounds by some unauthorized person was immaterial. The persons that had charge of the papers had authority to put them together and file them.

The court overruled appellants' motion to reject the remonstrance. This motion was designed to test the sufficiency of the remonstrance as a pleading. Properly, it was not a pleading. It did not need to state facts sufficient to constitute a defense to the petition. If the required number of landowners, with proper qualifications, "shall remonstrate in writing against the construction of such drain or ditch, such petition shall be dismissed." Simply that they do not want the drain is enough. That the required number, with proper qualifications, have signed the remonstrance is to be determined by proof. This remonstrance against a proposed drain is similar to the remonstrance against the granting of a liquor license that may be filed "by a majority of the legal voters of the township or ward". In *Head* v. *Doehleman*, 148 Ind. 145, it was decided that the remonstrance need not aver that the

signers were voters, or a majority of the voters, and that a remonstrance stating merely the opposition of the signers to the granting of the license is sufficient.

Several months after the remonstrance was filed and at the time it was being heard, appellants' offer to file the withdrawal of 190 remonstrants was refused. A period of ten days after the docketing of the cause is allowed in which to file a remonstrance for dismissal of the petition. Within that time any remonstrant has the right to withdraw whether the remonstrance has been filed or not. After the ten days have elapsed, the question for determination on the petition and remonstrance, no matter how long the delay before the hearing is had, is whether or not the required number of landowners, with proper qualifications, were remonstrants at the expiration of the ten days period. No remonstrant may withdraw subsequently. *State* v. *Gerhardt,* 145 Ind. 439; *Conwell* v. *Overmeyer,* 145 Ind. 698; *White* v. *Prifogle,* 146 Ind. 64; *Sutherland* v. *McKinney,* 146 Ind. 611.

Appellants next complain of the action of the court in permitting 186 persons, not named in the petition, to file their remonstrance without first making application to be admitted as parties. The court treated the presentation of their remonstrance as an application in itself to be admitted as parties, and the petition was amended, at the suggestion of counsel for the petitioners, by adding the 186 names as owners of lands affected by the proposed drain. This assignment discloses at most a bare informality.

A witness for appellants, after testifying that one Votaw in May, 1896, died the owner of lands described in the petition and left children surviving him, was asked and not permitted to answer this question: "Give the names of the children or heirs that Jonas Votaw left at the time of his death." Thereupon counsel for petitioners stated to the court that Votaw was named in the petition as owner of lands affected; that he died before the filing thereof; that the tax duplicate shows the title of the lands to be now in

the name of Jonas Votaw; that he left (eight persons named) as his heirs; that two had signed remonstrances and had been admitted as parties; that the petitioners will ask that the other heirs be substituted for Jonas Votaw and counted for the drain; that they will show by other witnesses that more than 100 other persons named in the petition died before the filing thereof and left 500 heirs who had not signed remonstrances and ought to be counted for the drain.    On the refusal of this offer appellants predicate their argument that the court wronged them in not taking into account all of the heirs of deceased persons who had been named in the petition.    The question discussed is not presented by the record.    The "other witnesses" were not produced.    There was no error in refusing the offer as to what could have been shown by them.    *Judy v. Citizen*, 101 Ind. 18; *Kern v. Bridwell*, 119 Ind. 226; Elliott's Appellate Procedure, §743, and cases cited.    It was not harmful to reject counsel's statement that "they will ask that the other heirs of Votaw be substituted for him." The court could not rule upon the proposed application until it was made.    The offers regarding the contents of the tax duplicate and all other matters except the names of Votaw's children or heirs were not responsive to the question, and error can not be based on their rejection.    *Deal v. State*, 140 Ind. 354, 371.    If that part of the offer which was called for by the question had been allowed, the evidence of the names of Votaw's children or heirs would not have presented the point that is urged.    The tax duplicate was not offered.    Votaw died in May, 1896, and the petition was filed in the following September.    Did Votaw die testate or intestate?    Had the children or heirs in question ever any interest in lands described in the petition?    Had they parted with their interest before the petition was filed?    In regard to these and other matters that might be suggested no questions were asked and offers to prove made while any witness was on the stand.

Sauntman *v.* Maxwell.

It was proper for appellants to prove by experts, or by others who were qualified to give an opinion on the subject, that the proposed drainage could not be accomplished, without extraordinary labor and expense and in the best and cheapest manner, except by passing through the corporate limits of Portland. A witness, after testifying to some topographical facts, was asked whether or not in his opinion the proposed drainage could be accomplished, without extraordinary labor, etc., except by passing through the city. If the witness had been permitted to answer the question as asked, the answer would have been an opinion irrespective of any basis therefor. On a direct issue to be determined by the trier of the cause, it is not the general opinion of a witness that is to be listened to,—it is his opinion in connection with the facts on which the opinion is founded. Otherwise, there would be no means of weighing opinion testimony. The opinion must be asked for upon certain facts, either admitted to be true, or assumed, or previously testified to by the witness. The question must explicitly call for a conclusion from facts, not a mere general opinion. *Rush* v. *Megee*, 36 Ind. 69; *Bishop* v. *Spining*, 38 Ind. 143; *Guetig* v. *State*, 66 Ind. 94, 32 Am. Rep. 99; *Burns* v. *Barenfield*, 84 Ind. 43; *Elliott* v. *Russell*, 92 Ind. 526; *Craig* v. *Noblesville, etc., Co.*, 98 Ind. 109; *Deig* v. *Morehead*, 110 Ind. 451; *Bedford R. Co.* v. *Palmer*, 16 Ind. App. 17.

The court taxed against appellees certain costs of the sheriff for serving subpoenas upon remonstrants, issued on the precipe of the remonstrants, and witness fees claimed by remonstrants. They were bound to testify in their own behalf without being subpoenaed. They could not run up these costs against the petitioners. *Goodwin* v. *Smith*, 68 Ind. 301; *Reader* v. *Smith*, 88 Ind. 440.

Judgment affirmed.

Monks, J., did not participate in this decision.