HOOTEN ET AL. *v.* ALT ET AL.

[No. 30,265. Filed June 13, 1963.]

*Joseph T. Helling, Crumpacker, May, Levy & Searer,* both of South Bend, *Edwin K. Steers,* Attorney General, and *Kenneth D. Osborn,* of LaPorte, for appellant.

*Link, Link & Franceschini* and *John J. Davie,* both of LaPorte, for appellees.

LANDIS, J.[1]—This was an action for a restraining order and injunction against certain persons constituting the School Reorganization Committees of LaPorte and St. Joseph Counties and sought to restrain and enjoin the St. Joseph County Committee from excluding Hudson Township of LaPorte County in their respective plans for school reorganization.

The LaPorte Circuit Court issued a restraining order without notice and set the case for hearing on the temporary injunction. After two changes of venue the case reached the court below, which, after hearing, granted the temporary injunction, from which interlocutory order, appeal has been taken to this Court.

Appellants' first contention on this appeal concerns the question of the right of petitioners under the School Corporation Reorganization Act of 1959, as amended, to withdraw from their petition for inclusion in a plan for reorganization filed under the Act, Burns' §28-6106 (1962 Supp.).

The pertinent provisions of the statute are as follows:

" . . . Provided further, That before a plan is voted in and when sixty percent [60%] or more of the registered voters of any township, city or town adjacent to another county, petition their county committee requesting that all or part of their · particular township, city or town be included in the reorganization plan of an adjacent county, the county committee so petitioned shall release that part of the township, city or town so

1. This case was reassigned at a conference of the Court and was first received by the writer of this opinion on January 29, 1963.

designated to the county committee named in the petition, which county committee shall in turn include said released territory in the reorganization plan for their particular county. Such petition and request must be filed with the county committee prior to the time a final plan is submitted to the state commission or before a second or subsequent plan is submitted following rejection of the initial plan.

"Within five [5] days after the receipt of such petition, the county committee shall file such petition with the clerk of the circuit court. After receipt of the petition, the clerk shall make a certification under his hand and seal of his office as to (i) whether or not each signer thereon is a registered voter residing within the boundaries of the particular township, city or town, as disclosed by the voter registration records in the office of the clerk or the board of registration of the county, or wherever such registration records may be kept, (ii) the number of such registered voters signing the petition, and (iii) the number of registered voters residing within the boundaries of the particular township, city or town, as disclosed in the records mentioned in subdivision (i) hereof.

"Such certification shall be made by the clerk within thirty [30] days after the filing of the petition, excluding from the calculation of such period any time during which the registration records are unavailable to the clerk, or within such additional time as is reasonably necessary to permit the clerk to make such certification. The clerk shall establish a record of this certification in his office and shall return the petition together with his certification to the county committee. If the certification or certifications received from the clerk disclose that sixty per cent [60%] or more of the registered voters residing within the boundaries of the township, city or town, have signed the petition, the county committee shall so inform the neighboring county committee involved." Acts 1961, ch. 231, §1(3) p. 544.

In the case before us a petition was filed on April 6, 1961, with the LaPorte County School Reorganization Committee requesting that Hudson Township be released to the St. Joseph County School Reorganization Committee for inclusion in the reorganization plan of that adjacent county.

On April 11, 1961, the LaPorte County School Reorganization Committee filed the petition with the clerk of the LaPorte Circuit Court and on April 13, 1961, said clerk made his certification that the petition as filed with him contained the names of 521 out of 774 (this was more than the requisite 60%) registered voters of Hudson Township.

However, on the same day, to-wit: April 13, 1961, at about 1:30 o'clock in the afternoon, plaintiffs-appellees in this action filed a second petition with the secretary of the LaPorte County School Reorganization Committee asking to withdraw their names from the original petition. Later in the afternoon of the same date, the clerk of the LaPorte Circuit Court returned the original petition with his certificate attached to the secretary of the LaPorte County School Reorganization Committee.

On April 20, 1961, the LaPorte County School Reorganization Committee considered both petitions and the second petition was ordered referred to the clerk for certification as to the total number of names on said petition who were registered voters of Hudson Township. That sometime between April 21 and May 24 the clerk returned the second petition to the secretary of the LaPorte County School Reorganization Committee certifying that 140 names contained thereon were registered voters of said Hudson Township.

On May 4, 1961, the LaPorte County School Reorganization Committee considered both the original and the withdrawal petitions, rejected each of the petitions and refused to grant the prayer of either of such petitions.

On June 13, 1961, a director of the State Commission for the Reorganization of School Corporations by letter directed the LaPorte County Committee to release jurisdiction of Hudson Township to St. Joseph County and on June 16 the secretary of the LaPorte County Committee pursuant to said county committee's authorization wrote a letter to the St. Joseph County Committee releasing Hudson Township to that committee. The St. Joseph County Committee thereupon notified the LaPorte County Committee of its acceptance of the jurisdiction of Hudson Township and on June 23 the State Commission for the Reorganization of School Corporations recognized the authority of St. Joseph County to exercise jurisdiction over Hudson Township. Since June 15 the LaPorte County School Committee refused to exercise further jurisdiction over Hudson Township.

Appellants' first contention is that the trial court erred in its first four conclusions of law which were as follows:

*"Conclusion No. 1*
  That the law is with the Plaintiffs.

*"Conclusion No. 2*
  That at the time the plaintiffs filed their petition with the LaPorte School Reorganization Committed, said committee had taken no final action on the petition filed before it on the 6th day of April, 1961; had made no determination that more than 60% of the registered voters residing within the boundaries of Hudson Township had signed said petition; and had not released jurisdiction of Hudson Township to St. Joseph County.

*"Conclusion No. 3*

That the petition filed by plaintiffs was timely filed by said plaintiffs and said petition was a dismissal of the petition filed April 6th, 1961, as to the plaintiffs and that plaintiffs had a legal right to have their names withdrawn from the petition filed before said committee on the 6th day of April, 1961.

*"Conclusion No. 4*

That the refusal of the LaPorte County School Reorganization Committee to remove the names of plaintiffs from the original petition was contrary to law and the attempted release of Hudson Township to St. Joseph County by said Committee was a nullity for the reason that had plaintiffs' names been removed from the original petition as requested by them, the original petition filed April 6th, 1961, would have contained less than 60% of the registered voters residing within the boundaries of Hudson Township."

Appellants have quoted from an annotation in 126 A. L. R. 1031 as follows:

" . . . that it is almost universally held that signers of a petition or remonstrance may withdraw therefrom, . . . at any time before the instrument is filed, and may not withdraw after final action has been had thereon. But there is considerable variation in result and much conflict of authority as to the right to withdraw . . . at various stages of the proceedings after such filing but prior to such final action on the original petition . . . . The question is, of course, largely influenced by the nature of the proceeding involved and the terms of the statute under which it is instituted."

Appellants further state that:

"Indiana subscribes to the premise contained in the last sentence of this quotation, that the timeliness and effect of withdrawal requests depends upon the wording of the statute involved

and the nature of the proceeding." Citing: *State
ex rel. Harry* v. *Ice* (1934), 207 Ind. 65, 191
N. E. 155, 92 A. L. R. 1508; *The State* v. *Ger-
hardt* (1896), 145 Ind. 439, 473, 44 N. E. 469,
480, 33 L. R. A. 313, 325; *Sauntman* v. *Maxwell*
(1900), 154 Ind. 114, 54 N. E. 397; *Thorn* v. *Sil-
ver* (1910), 174 Ind. 504, 89 N. E. 943, 92 N. E.
161; *Parker et al.* v. *Seward School Twp. et al.*
(1959), 240 Ind. 1, 159 N. E. 2d 576.

Appellants refer to the first part of Burns' §28-6106
(1962 Supp.), *supra*, heretofore quoted wherein it is
stated that:

> " . . . when . . . sixty per cent [60%] or more
> of the registered voters . . . petition their county
> committee . . . the county committee so petitioned
> *shall* release that part . . . so designated to the
> county committee named in the petition, which
> county committee *shall* in turn include said re-
> leased territory in the reorganization plan for
> their particular county. . . . " (Emphasis sup-
> plied.) Acts 1959, ch. 202 §5(3), p. 451; 1961,
> ch. 231, §1(3), p. 544, *supra*.

Appellants argue that under the above quoted statute
" . . . If a petition signed by sixty per cent of the
registered voters, is filed, the reciprocal acts of re-
lease and assumption of jurisdiction by the respec-
tive county committees is [sic] mandated" and " . . .
The time for measuring the number of signatures is
. . . necessarily the date the petition is filed."

Appellants' position however is weakened when the
remainder of Burns' §28-6106 (1962 Supp.), *supra*,
is examined, providing that:

> "Within five [5] days after receipt of such pe-
> tition, the county committee shall file such peti-
> tion with the clerk of the circuit court. After
> receipt of the petition, the clerk shall make a
> certification . . . as to . . . whether or not each
> signer thereon is a registered voter . . . of the
> . . . township.

" . . . The clerk . . . shall return the petition together with his certification to the county committee. *If the certification or certifications* received from the clerk disclose that sixty per cent [60%] or more of the registered voters . . . *have signed the petition,* the county committee shall so inform the neighboring county committee involved." (Emphasis supplied.) Acts 1961, ch. 231, §1(3), p. 544, *supra.*

Appellants further argue that if a determination as to the sufficiency of the petition was contemplated by the statutes in this case, the clerk of the Circuit Court and not the county committee is given that exclusive function. However, it should be noted that under the above statute the clerk merely makes a certification as to whether each signer is a registered voter of the township, the number of such registered voters signing the petition, and the number of registered voters residing in the township. The disclosure of such facts is made known to the county committee, who, if such disclosure reveals 60% or more of the registered voters have signed the petition, informs the neighboring county committee. The statute thus contemplates that a determination be made as to the sufficiency of the petition and it is evident from the language of the statute that the determination is to be by the county committee and not the clerk of the court.

It is not disputed in the case before us that the withdrawal of the names by the second petition was prior to the receipt by the county committee of the certifications from the clerk and prior to any determination by the county committee as to what such certifications disclosed.

The most recent case before this Court considering the question of the validity of such attempted with-

drawals was *Petercheff et al.* v. *City of Indianapolis* (1962), 242 Ind. 490, 178 N. E. 2d 746. That case concerned the sufficiency of a remonstrance against an annexation ordinance of the City of Indianapolis. Appellants filed a remonstrance in the trial court against the annexation, which remonstrance was referred to the auditor of Marion County, who certified the total number of persons owning real estate in the area concerned and the number of valid remonstrators who had signed the remonstrance. At the time the remonstrance was filed it contained the necessary majority of signers required under the statute. Subsequently, appellee filed a motion to withdraw the names of some 50 remonstrators who asked that their names be removed from the original remonstrance. The trial court allowed the withdrawal of the remonstrators and held the resmonstrance without the withdrawn signatures to be insufficient, and dismissed the action. We affirmed on appeal, stating at p. 494 of 242 Ind. and p. 748 of 178 N. E. 2d:

> "The rule is well settled that the withdrawal of names on a petition operates as a dismissal of it. as to those names withdrawn, and it follows . . . that persons signing a petition have the right to withdraw their names therefrom before the tribunal created by law to receive and consider said petition has acted thereon, *Jones [et al.]* v. *Nay et al.* (1960), 240 Ind. 306, [310], 163 N. E. 2d 119, 120; *Parker [et al.]* v. *Seward School Twp. et al.* (1959), 240 Ind. 1, [7], 159 N. E. 2d 576, 579; *Hord, Prosecuting Attorney ex rel. Stanley and Others* v. *Elliott and Others* (1870), 33 Ind. 220, 222; *Black et al.* v. *Campbell et al.* (1887), 112 Ind. 122, 126, 13 N. E. 409, 411."

It necessarily follows that the withdrawal of names attempted by the second petition in the case at bar

was prior to any determination by the county committee with reference to the first petition previously filed, and it was therefore in our judgment timely filed.

The authorities relied on by appellants are not applicable to the facts in the case before us. Appellants' contention that the statutes involved in this case should be read in *pari materia* with another statute[2] involving a somewhat related subject matter is not well taken as the statutes here in question are not ambiguous on the question of the right of withdrawal but such matter is not in any wise therein discussed. See: 26 I. L. E., Statutes, §130, p. 342.

We conclude appellants have not shown error to have been committed by the court in its conclusions of law numbered 1, 2, 3 and 4.

Appellants have further contended that the remedy of injunction was not proper in the instant case, but that if appellees were aggrieved by the county plan of reorganization they could appeal to the state commission and then to the circuit court of the county and ultimately to the Appellate or Supreme Court.

However, this Court has recently held a writ of prohibition could issue to enjoin the lower court from acting outside its authority under one of the school reorganization statutes. See: *State ex rel. Jones v. Johnson Circuit Court* (1962), 243 Ind. 7, 11, 181 N. E. 2d 857, 860. In view of the result we have heretofore reached in this opinion as to the timeliness of the withdrawal of names on the petition, it is apparent that any action taken thereon by the LaPorte

---

2. Burns' §28-6117 (1962 Supp.), Acts 1959, ch. 202, §7(1), p. 451; 1961, ch. 302, §1(1), p. 816.

County and St. Joseph County Committees directed toward the transfer of Hudson Township to St. Joseph County was without jurisdiction and was subject to the equity powers of the lower court. See: *State Board Tax Comm.* v. *Belt R., etc., Co.* (1921), 191 Ind. 282, 291, 130 N. E. 641, 644. The case of *Greathouse* v. *Board, etc.* (1926), 198 Ind. 95, 107, 151 N. E. 411, 415, cited by appellants and holding that injunctions will not be granted merely to allay the fears and apprehensions of individuals, is not in point.

We must hold that appellants' contention as to the impropriety of equitable relief in this case is without merit.

Appellants finally contend the court erred in issuing the temporary injunction without requiring appellees-plaintiffs to enter into a written undertaking with surety to be approved by the court to the adverse parties for the payment of all damages and costs which may accrue by reason of the injunction.

Here it appears a bond was posted signed by one of the appellees providing for the indemnification of appellants for " . . . all damages and loss which may accrue to them by reason of the injunction in this action." Appellants filed an "unsworn to" petition asking that the court require appellees to furnish bond with surety in an amount not less than $10,000 as a condition to the continuance of the restraining order or the granting of a temporary injunction. The court denied the motion for increase in bond for restraining order pending hearing for temporary injunction.

The applicable statutes cited by appellants bearing upon this matter are as follows:

"Bond—No injunction or restraining order shall be granted until the party asking it shall enter into a written undertaking, with surety to be ap-

proved by the court or judge, to the adverse party affected thereby, for the payment of all damages and costs which may accrue by reason of the injunction or restraining order." Burns' §3-2107 (1946 Repl.), Acts 1881 (Spec. Sess.), ch. 38 §183, p. 240.

"Second bond unnecessary—Exception—When an injunction is granted upon the hearing, after a temporary restraining order, the plaintiff shall not be required to enter into a second written undertaking, unless the former shall be deemed insufficient, but the plaintiff and his surety shall remain liable upon the original undertaking." Burns' §3-2108 (1946 Repl.), Acts 1881 (Spec. Sess.), ch. 38, §184, p. 240.

"Bonds and undertakings in civil actions— Penalty fixed by court if not specified by law— Minimum—Reconsideration.—Whenever any bond or undertaking is required in connection with any civil action or proceeding brought in any court of this state, and in the absence of any provision of law specifying the amount of such bond or undertaking, the judge of such court shall fix the penalty thereof in such amount as he in his discretion may deem adequate, but in no event less than one hundred dollars [$100]. Nothing herein contained, however, shall be construed to preclude a full and complete reconsideration of the sufficiency of said amount by the judge of the court in which the action or proceeding is pending upon the motion of any aggrieved party." Burns' §2-4727 (1962 Supp.), Acts 1947, ch. 215, §1, p. 779.

It has been held by this Court that under Burns' §3-2107, *supra,* the court should not issue a temporary injunction without a bond to protect the defendant. *Indianapolis Dairymen's Coop.* v. *Bottema* (1948), 226 Ind. 260, 264, 79 N. E. 2d 409, 411. Although it was not pointed out by appellants' petition, it is apparent that no surety was contained on the bond approved by the court below at the time of the issuance of the restraining order. This

was contrary to Burns' §3-2107, *supra,* which specifically required the posting of a bond with surety in order for an injunction or restraining order to issue.

We do not however have before us a case attacking the validity of the restraining order as this is an appeal from the granting of the temporary injunction. Appellants' assignment of error here is that *the court erred in issuing a temporary injunction* without requiring plaintiffs-appellees to furnish bond with surety for the payment of all damages and costs which may accrue by reason of the injunction.

An examination of the record does not reveal that the court below ever ruled upon this question presented by appellants' "unsworn to" petition. The order book entry of the court shows solely: "The Court now denies the motion *for increase in plaintiff's bond for restraining order* pending hearing for temporary injunction." (Emphasis supplied.)

Had appellants desired to raise the question of the lower court's abuse of discretion in failing to require bond with surety in an amount not less than $10,000 at the time of issuing the temporary injunction they should have specifically requested the court in their petition to determine such matter. The petition here filed asked, in the alternative, that bond be required " . . . as a condition to the continuance of the restraining order or to the granting of a temporary injunction."

The court's ruling denying "the motion for increase in plaintiff's bond for restraining order" obviously did not encompass the question appellants are seeking to present here on appeal relative to the bond on temporary injunction, and as it does not appear such question was presented to the

court below and determined, we cannot properly consider it here on appeal.

The interlocutory order granting the temporary injunction is affirmed.

Myers, C. J., and Achor and Arterburn, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 191 N. E. 2d 13.