BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES'
RETIREMENT FUND *v.* KING.

[No. 1067S101. Filed May 14, 1968.]

*John J. Dillon,* Attorney General, *Charles S. White,* Chief Counsel-Staff, and *Virginia D. McCarty,* Assistant Attorney General, for appellant.

*Charles E. Johnson, Patrick E. Chavis, Jr.,* and *Dulberger, Heeter, Johnson & Salb,* of Indianapolis, for appellee.

LEWIS, C. J.—This is an appeal from a decision of the Superior Court of Marion County which rendered the following order:

"Hearing on temporary injunction held, taken under advisement, Restraining Order continued in full force and effect."

The appellant is the Board of Trustees for a retirement fund plan. The plan is for the benefit of certain public employees and the fund is accumulated by contributions made by the State of Indiana and the member-employees of the plan. Appellant is required by statute to pay up to three (3%) per cent interest on each member's account annually. These three (3%) per cent interest payments have been made regularly to those entitled to same. However, the money paid into the retirement fund by the employer and employee members has earned more than three (3%) per cent interest in the last few years, resulting in a "surplus interest" account. The appellant sought to credit this "surplus interest" to the amount owed by the State to the fund under the terms of the plan. It is appellant's theory that since the appellee may only receive a maximum of three (3%) per cent interest on his contributions by statute, the "surplus interest" might be most equitably distributed by crediting it to the State's debt. The appellee seeks to enjoin this action on the grounds that it would diminish the overall assets of the fund excusing the State from making payments which it now owes to it.

On August 11, 1967, the appellee filed a complaint praying for a temporary injunction to enjoin the agency from crediting the "surplus interest" to the State's account payable. The appellee's complaint below alleged, substantially, the following:

"1. That he is a member of the Public Employees' Retirement Fund of Indiana and had made all of the contributions required by him to be made to said Fund.
2. That the defendant, Board of Trustees of the Public Employees' Retirement Fund of Indiana is eligible to be sued pursuant to Burns' 60-1614(i).

3. That the Acts 1945, Ch. 340, Sec. 18a, as added by Acts 1957, Ch. 232, Sec. 6, p. 507; 1959, Ch. 376, Sec. 3, p. 1014, requires the Treasurer of the Board of Trustees, to credit all interest or exchange of investments to the account of the Fund.

4. That on Wednesday, August 9, 1967, at a meeting of the Board of Trustees, said Board voted to credit interest and gains from the sale of exchanges to the employers' accounts.

5. That a large percentage of said interest and gains from the exchange of investments was due to the employee contributions made by plaintiff and others similarly situated.

6. That the Board of Trustees used as their authority for crediting the employers' accounts with such funds the Acts of 1955, Ch. 329, Sec. 14, p. 1022; 1957, Ch. 311, Sec. 6, p. 889; 1959, Ch. 325, Sec. 3, p. 857. That said statute requires any board administering a public employees' retirement fund to make a fair and equitable distribution of the funds.

7. That by crediting moneys earned through employee contributions to employers' funds, said Board was not fair and equitable.

8. That said Acts further deal with Old Age and Survivors' Insurance rather than the Public Employees' Retirement Fund.

9. That the State of Indiana, one of the employers under the Public Employees' Retirement Act, is approximately fifty million dollars behind in their contributions to said Fund and that it would be grossly unfair and inequitable to allow interest made from employees' contributions to be credited to said employer.

10. That the Board of Trustees are earning approximately 4.08% interest on investments in the Public Employees' Retirement at the present time but are only charging the State of Indiana 2.5% interest on its unfunded liability.

11. That an emergency exists and that unless a temporary injunction is granted without notice and without hearing, said moneys will be transferred to the employers' accounts.

WHEREFORE, plaintiff prays that a temporary injunction be issued enjoining the defendant Board from crediting the employers' accounts with two and one-half million dollars presently accumulated in interest and gains from exchange of securities to the employers' accounts, and that said injunction be made permanent."

The Court then entered the following order:

"Plaintiff having filed his Complaint for Temporary Injunction and for Permanent Injunction, which complaint is in the following words and figures, to-wit:  (H.I.)

And the Court being duly advised in the premises, finds that an emergency exists,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT FUND OF INDIANA Be and it is hereby ENJOINED from crediting any moneys to the employers' accounts until further order of this Court.

IT IS FURTHER ORDERED that the defendant be and appear in the Superior Court of Marion County, Room No. 6 on the 19th day of September, 1967 at *9:00* o'clock A.M. to show cause why said injunction should not be made permanent.

IT IS FURTHER ORDERED that a copy of this order be served upon the defendant, Board of Trustees of the Public Employees' Retirement Fund of Indiana, and upon the State of Indiana.

/s/ *Clarence R. Mills, Jr.,* Pro Tem
JUDGE, MARION SUPERIOR COURT
Room No. 6

DATED: *August 11, 1967*"

It is to be noted that in the Court's foregoing order, the document is referred to as a "Temporary Injunction." This, however, is a misnomer and the Court's order constitutes at most a "Temporary Restraining Order."

On August 25, 1967, appellee and appellant filed a "Joint Petition to Modify Restraining Order" wherein they modified the "Injunction" previously granted to be a "Temporary Restraining Order" to expire on September 19, 1967. The "Petition to Modify" also narrowed the "Injunction" to only prohibit the appellant from the crediting of proceeds from the employees' contributions, but not the proceeds from employers' contributions.

A hearing on the "Temporary Injunction" was held on September 19, 1967, with the Trial Court making the entry appealed from, said entry set out herein above, *supra*.

It is important to note that at no time was there a bond or surety agreement filed with the Court in conjunction with these proceedings. Burns' Indiana Statutes, Anno. (1968 Repl.), § 3-2107, reads as follows:

"No injunction or restraining order shall be granted until the party asking it shall enter a written undertaking, with surety, to be approved by the court or judge, to the adverse party affected thereby, for the payment of all damages and costs which may accrue by reason of the injunction or restraining order. [Acts 1881 (Spec. Sess.), ch. 38, § 183, p. 240.]"

This statute states that *no injunction* or *restraining order* may issue without the posting of a bond. It is appellant's position that it was, therefore, erroneous for the Trial Court to issue this order without bond having been posted by the appellee. The appellee, however, contends that the above statute contemplates only injunctions and restraining orders and not *temporary* restraining orders. We feel that the argument of the appellee is a specious one at best. The statute in question demands that the party moving for a temporary injunction or restraining order make financial arrangements with a surety which is acceptable in the Court in order to provide an adequate fund from which Court costs and damages may be paid should the need arise. The unwarranted issuance of a temporary restraining order could conceivably cause great harm to an individual. If the moving party was insolvent and had not posted bond, the injured party would have no practical avenue by which to proceed to recover his losses. The purpose of the Legislators in enacting this law is readily apparent and we can see no reason why it should be construed as narrowly as appellee suggests. The purpose and language of the statute is indeed broad enough to encompass temporary restraining orders, restraining orders, and temporary injunctions.

Appellant cites the case of *Hooten et al.* v. *Alt et al.* (1963), 244 Ind. 93, 191 N. E. 2d 13, for authority for the proposition that the issuance of a temporary injunction or restraining order requires the posting of a bond. However, in *Hooten et al.* v. *Alt et al., supra,* in which a temporary injunction was issued without a bond, its issuance was affirmed because the attacking party did not make a timely objection. This Court, in arriving at this conclusion, made the following statements:

> "Had appellants desired to raise the question of the lower court's abuse of discretion in failing to require bond with surety in an amount not less than $10,000 at the time of issuing the temporary injunction they should have specifically requested the court in their petition to determine such matter. The petition here filed asked, in the alternative, that bond be required '. . . as a condition to the continuance of the restraining order or to the granting of a temporary injunction.'

> The court's ruling denying 'the motion for increase in plaintiff's bond for restraining order' obviously did not encompass the question appellants are seeking to present here on appeal relative to the bond on temporary injunction, and as it does not appear such question was presented to the court below and determined, we cannot properly consider it on appeal.

> The interlocutory order granting the temporary injunction is affirmed."

In the case at bar, after diligent search of the record, we are unable to find any such objection having been made at the time of the issuance of the order or in the hearing following thereafter—nor was any mention made in any of the briefs filed by the litigants. Therefore, this question concerning the failure of the appellee to post the required bond is raised on appeal for the first time, and we may not now properly consider it.

Essentially this appeal concerns an attempt by an individual to attack an act taken by an administrative body. This

remedy only lies where the administrative officer or body has acted arbitrarily, unreasonably, or unlawfully. Also, the burden is on the party seeking to attack the action to show that the administrative body acted in an arbitrary, unreasonable, or unlawful manner. *City of Evansville* v. *Nelson* (1964), 245 Ind. 430, 199 N. E. 2d 703.

Succinctly stated, appellee's complaint is that the Public Employees' Retirement Fund is allocating its "surplus interest" funds to the State's overdue debt and that it is doing this in contravention of the controlling statute, Burns' Indiana Statutes, Anno., (1961 Repl.), § 60-1925. The pertinent part of § 60-1925(d), *supra*, which is applicable to the situation at bar, reads as follows:

"... As of the end of any fiscal year the board may, and at least once in every five [5] year period after June 30, 1955, the board shall have its actuary determine and report what would constitute an equitable allocation of the accumulation of all such net gains or losses, not previously allocated, respectively, to the state and participating political subdivisions. With due regard to such report the board shall adopt what it deems a proper basis of allocation and shall direct its executive secretary to have the appropriate charges or credits made to the respective portions of the retirement allowance account allocable to the state and participating political subdivisions. . . ."

Upon a careful reading of the above statute, it is apparent that the agency is under a statutory duty to perodically determine and report what would constitute an equitable allocation of accumulated surplus fund to the State and participating political subdivisions. However, as set out herein below, the Board may allocate a contingency reserve as provided by Burns' § 60-1925(d), *supra*.

"... The board may withhold from any such allocation of accumulated net gains, as an unallocated contingency reserve, an amount which it shall deem prudent but not more than 5% of the aggregate actuarial reserve of the fund, determined by the actuary as of the allocation date, with respect to the benefits provided by article III [§§ 60-1923—

60-1940] of this act for employees subject to the provisions of this act who shall have died or gone on retirement on, or prior to, such allocation date and for persons deriving benefits through such employees. [Acts 1955, ch. 329, § 14, p. 1022; 1957, ch. 311, § 6, p. 889; 1959, ch. 325, § 3, p. 857.]"

Notwithstanding this reserve fund, the Board is under a statutory duty to equitably allocate this "surplus interest" fund to the State and its participating agencies.

In his complaint for an injunction, the appellee seeks to stop the Board from crediting the surplus funds to the debt owed by the State. However, he does not attack the manner in which the Board is attempting this action or the amount which it is desiring to credit; but rather, he attacks the Board's fundamental right to complete this transfer. It is appellee's contention, be it one dollar or the entire surplus fund, that the Board may not credit surplus monies to the State's account.

We do not interpret the applicable statute in this manner. It is clear in its meaning, and we are compelled to decide that the Board may, from time to time, make equitable allocations to the participating State-employers' accounts.

We emphasize again that in his complaint, appellee is required to show how the administrative body, or its personnel, was acting in an arbitrary, unreasonable, and unlawful manner. *Craig* v. *School City of Gary* (1965), 138 Ind. App. 261, 211 N. E. 2d 616; *Stutesman* v. *Sigerfoos, Trustee* (1924), 82 Ind. App. 600, 145 N. E. 507. Appellee, since he, erroneously, only attacked the Board's basic right to allocate these funds to the State, has not met his burden. The Board is attempting to comply with its statutory duty and appellee has not adequately shown that it is acting unlawfully.

The Trial Court is ordered to dissolve the restraining order and to enter judgment for the appellant.

Arterburn, Hunter, Jackson and Mote, JJ., concur.

NOTE.—Reported in 236 N. E. 2d 600.