In the Matter of the ESTATE OF Martha F. McNICHOLAS, Deceased, Merchants National Bank & Trust Company, Executor, Appellant,

v.

STATE of Indiana, Appellee.

No. 49A04–9010–CV–483.

Court of Appeals of Indiana, Fourth District.

Nov. 12, 1991.

placed in trust for the benefit of the third daughter, Mary, who needed special nursing care.[2] At Mary's death, the trust was to terminate and any remaining assets were to be distributed to Marlene and Katherine in equal shares.[3]

The dispute in this appeal arose between the Executor of the estate and the State Inheritance Tax Division as to how the State inheritance tax should be assessed. The probate court held the property passed under the will and computed the tax at $91,399.54—as opposed to the amount of $69,661.20 based on the distribution in the settlement agreement.[4]

We agree with the probate court that the agreement—made after Martha's death—to redistribute Martha's estate did not alter the State inheritance tax. Affirmed.

Charles F. Cremer, Jr., John A. Cremer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jane E. Griffin, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

After Martha McNicholas died, her three daughters were dissatisfied with the division of property in their mother's will and entered into an agreement, filed with and approved by the court, dividing the property into three equal shares. In her will, Martha provided for two daughters, Marlene and Katherine, to receive her home and personal property (valued at approximately $170,000);[1] the remainder of the estate (approximately $1,500,000) was to be

## DECISION

Martha McNicholas died shortly after executing her will. The will was admitted to probate on July 7, 1988, and Merchants National Bank and Trust Company was appointed Executor and Trustee. The daughters contemplated filing a will contest action. Instead of filing a will contest (Ind.Code 29–1–7–17), they entered into a family settlement agreement, pursuant to IC 29–1–9–1, *et seq.*, in which each daughter would take one-third of the net estate instead of the distribution provided for by Martha's will.[5] Merchants, as Executor and Trustee under the will, joined in the agreement, and the petition alleged that there were no other living persons with contingent interests who could be affected by the compromise.

---

1. Item III of the will.

2. Item IV of the will.

3. Item V of the will.

4. The amount of the tax was originally calculated as $99,065.10, but was later revised to $91,399.54. The revised tax amounts to $21,738.34 more than that calculated by Executor. The total amount of the net estate was the same under the will and under the agreement (approximately $1,700,000); however, the difference in the tax is due to the fact that, under the distribution provided for in the will, the bulk of

the estate was placed in trust and was taxed on a larger value and at a higher rate than if the daughters had each taken one-third of the net estate. See Ind.Code 6–4.1–5–1 for rates.

5. The parties alleged in the petition that 1) Mary suffered from an incurable muscle disorder requiring the full time assistance of medical care, and that she had been cared for in the family home by Katherine with the assistance of a nurse's aide; 2) Martha had anticipated, in making her will, that Mary would need to be placed in a nursing home; and 3) the daughters believed Mary would receive better care in the home.

On September 28, 1988, within the time period for filing a will contest, the probate court approved the agreement:

"[T]he Court, having examined said petition and being fully advised in the premises, now finds that the facts in said petition are true; that there appears to be no necessity for requiring notice; and that the prayer of said petition should be granted.

IT IS THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the Family Settlement Agreement heretofore entered into by and between Mary K. McNicholas, Katherine A. McNicholas, and Marlene L. McNicholas, the heirs at law and legatees under the Will of Martha F. McNicholas, deceased, be, and it is hereby approved; that the *bequests under Items III and IV of the decedent's Will are invalid and of no force and effect* and that Mary K. McNicholas, Katherine A. McNicholas, and Marlene L. McNicholas shall share equally each taking one-third (⅓) of the decedent's net estate.... and; that the Merchants National Bank & Trust Company of Indianapolis, Executor herein shall acknowledge receipt of said Agreement and it is hereby directed to make all further disposition of the decedent's estate in accordance with the terms thereof; and this matter is continued until further order of the Court."

(R. 32–33, emphasis added, omitting description of the specific manner in which the estate is to be distributed between the daughters.)

Thereafter, the Executor calculated the inheritance tax on the basis of the shares each daughter actually received under the agreement—the same amount they would have received if Martha had died intestate. When the probate court denied Executor's petition to redetermine the tax, Executor appealed, claiming the inheritance tax should have been calculated on the basis of intestacy.

Executor contends that the legislature provided in the compromise statute an alternate mechanism for resolving will contests without the expense and delay of litigation and argues that when the court approved the family settlement agreement and held that all the provisions under Martha's will which purported to distribute her property (Items III and IV) were "invalid and of no force and effect," there was no property right to be taxed under the will. Because the inheritance tax is not a tax on a decedent's estate, but a tax on the transfer of property, Executor argues that the tax should have been calculated on the shares actually distributed to the daughters.

The State argues that the trial court correctly determined the amount of inheritance tax due consistent with the distribution under the will because the will was never invalidated. The State contends that once a will has been probated and declared to be duly executed, *only* a will contest action under Ind.Code 29–1–7–17 can challenge the validity of the will or its execution, citing *Niemiec v. Niemiec* (1982), Ind. App., 435 N.E.2d 999; *Modlin v. Riggle* (1980), Ind.App., 399 N.E.2d 767; and *In Re Estate of Plummer* (1966), 141 Ind.App. 142, 219 N.E.2d 917. The State asserts there was no basis for setting aside the will as contemplated by the will contest statute. While the State acknowledges that under Indiana law family settlement agreements are favored, it points out that the agreement is, in fact, a contract among living persons to distribute Martha's estate in a manner different from that chosen by Martha—an *assignment* of rights under the will. The State argues that while the parties are free to agree to any distribution they choose, it does not alter the manner in which the inheritance tax is imposed. Additionally, the State points to the legislative provision in IC 29–1–9–1—that no compromise shall in any way impair the rights of the taxing authorities—as evidence of the legislature's intent that a compromise would not alter the calculation of State inheritance tax.

In Indiana, the inheritance tax is not a tax on the property of decedent's estate, but a tax on the privilege of succeeding to property rights of the deceased.

*In Re Estate of Grotrian* (1980), Ind.App., 405 N.E.2d 69. The inheritance tax is imposed upon the *transfer* of decedent's property to the legatee or beneficiary. *Ind. Dept. of State Revenue, Inheritance Tax Div. v. Estate of Cohen* (1982), Ind.App., 436 N.E.2d 832, citing IC 6–4.1–2–1 and 3A *Henry's Probate Law and Practice*, Chap. 41 § 2 at 366 (1980). The inheritance tax accrues and becomes a lien on decedent's property at the time of decedent's death. IC 6–4.1–8–1.[6]

■ If a will is admitted to probate and never set aside, the property is transferred under the will and must be taxed as such. *Indiana Dept. of State Revenue, Inheritance Tax Div. v. Estate of Binhack* (1981), Ind.App., 426 N.E.2d 714, citing *Indiana Dept. of of State Revenue, Inheritance Tax Div. v. Kitchin* (1949), 119 Ind.App. 422, 86 N.E.2d 96. Both parties assert that *Binhack* and *Kitchin* are controlling. In *Binhack*, Anna Binhack died testate naming her daughter, Betty, as the sole devisee. Anna's will was admitted to probate. The four children of Anna's deceased son contested the validity of the will. The parties executed a family settlement agreement providing that the will contest action would be dismissed and the grandchildren were to take certain real estate by virtue of inheritance. The probate court ordered that the distribution of the estate be made in accordance with the will *and* the family settlement agreement and redetermined the inheritance tax liability based upon the manner in which the property was actually distributed. The State appealed. This court reversed, holding that the inheritance tax must be calculated under the provisions of the will unless the will has been set aside.

The State argues that in the case before us the *will* was admitted to probate and, although the court held certain provisions of the will were invalid, the will was not set aside. Thus, it argues *Binhack* requires the inheritance tax to follow the terms of the will. Executor contends that in the present case, unlike *Kitchin* and *Binhack*, in which the wills were held to be *valid,* there was nothing left of Martha's will once all the sections of the will disposing of the property were invalidated—thus, the will was, in effect, set aside. Executor argues that, in this particular case, to require the formal revocation of the will or a will contest, as the State would require, would be to exalt form over substance.

■ We believe Executor misinterprets *Binhack* as authority that a trial court may, in approving a settlement agreement, set aside or invalidate a will. Executor relies on the following language from *Binhack:*

> "[W]hile our equitable predilections might be to determine the inheritance tax on the basis of the actual distribution effected by the final property settlement agreement rather than on the basis of the distribution provided for by the will, we find that, at least *so long as the will has not been set aside as invalid,* the legislature has provided otherwise."

426 N.E.2d at 716, citing *Kitchin, supra.*[7] We do not think the language quoted above means that a trial court may, in approving a settlement agreement, set aside a will or otherwise determine the merits of a contest to determine a will's validity. Thus, when the probate court recited in its order approving the settlement that certain provi-

6. Except that the tax imposed on the decedent's transfer of a contingent or defeasible interest in property accrues and is due when the transferee of the interest obtains the beneficial enjoyment or possession of the property. IC 6–4.1–6–6(b).

7. *Kitchin* involved a will contest by relatives of the decedent on the ground that the testator was of unsound mind and the will was unduly executed. The court determined the testator was of sound mind, the will was valid, but ordered the administrator to pay the contesting parties $13,-000 in settlement of their interests in the estate.

The administrator paid the $13,000 and sought to deduct the amount from the value of the estate for inheritance tax purposes. The probate court permitted the deduction, and the State Revenue Department, Inheritance Tax Division, appealed. This court reversed, reasoning that the property was transferred to the contesters by virtue of contracts among living persons, as assignees of those to whom decedent's property transferred by the terms of the will.

sions of the will were "invalid," the court misspoke.

■ The compromise statute is broader than the will contest statute in that it provides for the settlement of issues which are not involved in determining the validity of the will.[8] For example, it provides for settlement of issues regarding the construction or effect of a will which may not involve a question of the will's validity. The compromise statute does not require that the parties have a reason sufficient to invalidate a will, but merely provides a mechanism for parties with an interest in a decedent's estate to compromise their differences and obtain a court order approving such compromise which is then binding on the parties. The statute reads:

"The compromise of any contest or controversy as to:

(a) Admission to probate of any instrument offered as the last will of any decedent,

(b) The construction, validity or effect of any such instrument,

(c) The rights or interests in the estate of the decedent of any person, whether claiming under a Will or as heir,

(d) The rights or interests of any beneficiary of any testamentary trust or

(e) The administration of the estate of any decedent or of any testamentary trust,

whether or not there is or may be any person interested who is a minor or otherwise without legal capacity to act in person or whose present existence or whereabouts cannot be ascertained, or whether or not there is any inalienable estate or future contingent interest which may be affected by such compro-

mise, shall, if made in accordance with the provisions of this article, be lawful and binding upon all the parties thereto, whether born or unborn, ascertained or unascertained, including such as are presented by trustees, guardians of estates and guardians ad litem; but *no such compromise shall in any way impair the rights of creditors or of taxing authorities.*

IC 29–1–9–1, (emphasis added). Upon the execution in writing of an agreement by all parties interested in the will, the parties may submit their agreement to the court for approval. IC 29–1–9–2. Notice must be provided to all unborn persons who may take a contingent interest, the personal representative of the estate, any trustee of any testamentary trust which would be affected by the compromise, and any guardian ad litem appointed by the court to represent the interests of others interested in the will or estate (incompetents, minors, or living persons who cannot be located). *Id.*

■ IC 29–1–9–3 sets out the authority of the trial court when approving a family settlement agreement. It reads:

"Upon due notice, in the manner directed by the court, to all interested persons in being, or to their guardians, and to the guardians of all unborn persons who may take contingent interests by the compromise, and to the personal representative of the estate and to all trustees of testamentary trusts which would be affected by the compromise, *the court shall, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries is just*

---

**8.** There are four statutory provisions for contesting the validity of a will under IC 29–1–7–17: 1) the testator's unsoundness of mind, 2) undue execution of the will, 3) will executed under duress or obtained by fraud, or 4) any other valid objection to the will's validity or the probate of the will. Other kinds of objections to the will's validity include the existence of other wills or the will offered for probate has been revoked. *See e.g., In re Plummer's Estate* (1966), 141 Ind.App. 142, 219 N.E.2d 917. This court has held that a will contest is not a general action to determine any and every individual's claim in the decedent's estate, but an action to

determine the *validity* of the will: the sole purpose is to determine whether the will in question is *the will* of the testator. *Cook v. Loftus* (1981), Ind.App., 414 N.E.2d 581. Although the daughters may have had a statutory reason to contest whether the probated will was *the will* of their mother, they did not assert any such reason as the basis for their good faith dispute as to the validity of the will. The only justification given was that the daughters believed a different distribution was in their best interests. We agree with the State's argument that such is not a ground for invalidating a will as contemplated by the will contest statute.

*and reasonable,* make an order *approving the agreement* and *directing the fiduciaries and guardians ad litem to execute such agreement. Upon the making of such order and the execution of the agreement, all further disposition of the estate shall be in accordance with the terms of the agreement.*"
(Emphasis added.) It is clear that there is no provision in the compromise statute authorizing a trial court to rule upon the merits of a contest or controversy or to invalidate a will.

■ We also observe that a court order approving a settlement agreement is a special type of order. "It is not an adjudication of the issues of the litigation; it is an avoidance of adjudication." *Bash v. Firstmark Standard Life Insurance Co.* (7th Cir.1988), 861 F.2d 159, (where the appellate court considered whether to dismiss an appeal in a class action suit where objectors did not appeal from the order approving the settlement). It is not a ruling on the merits, but is a compromise between the parties which they submit to the court to stay proceedings in the case. *Mitchell Properties, Inc. v. Real Estate Title Co., Inc.* (1985), 62 Md.App. 473, 490 A.2d 271. Under the provisions of our compromise statute (IC 29-1-9-3), all that a court may do is 1) determine whether there is a good faith controversy and whether the effect of the agreement is just and reasonable; 2) approve the agreement; 3) order the interested parties to execute such agreement; and 4) order the property to be distributed to the parties according to the settlement agreement.

■ In summary, we agree with the State that the legislature specifically provided that any agreement under the compromise statute could not impair the rights of the taxing authorities—indicating the legislature did not intend that a settlement agreement would alter the manner in which the inheritance tax is imposed.[9] The probate court could not invalidate Martha's will, nor set it aside. The court could only approve or disapprove the agreement. Because the will was admitted to probate and the court was without authority to invalidate or set aside the will, the court properly determined the State inheritance tax must be based on the distribution under the will.[10]

9. There is a conflict in the authorities on whether a settlement agreement compromising a will contest and providing for a distribution of testator's property other than that provided for in the will, affects state succession taxes. Annot., *Succession, estate, or inheritance tax as affected by compromise of the will contest,* 36 A.L.R.2d 917 (1954). The majority view appears to be that the tax is computed in accordance with the terms of the will. Courts taking this position reason that the tax is fixed at the time of the death of the testator, and since a will cannot be changed by agreement entered into after testator's death, property passing under such an agreement is not inherited, but passes by an assignment from living persons of their rights under the will. *Id.,* citing *Indiana Dept. of State Revenue v. Kitchin* (1949), 119 Ind.App. 422, 86 N.E.2d 96. This reasoning does not apply if, as a result of the compromise agreement, the testator's will is set aside. Then the tax follows the terms of the agreement. *But see, State ex rel. Hilton v. Probate Court* (1919), 143 Minn. 77, 172 N.W. 902.

10. There is a separate statute which permits a person to disclaim or renounce an interest in a decedent's estate. Ind.Code 32-3-2-1 *et seq.* When there is an effective disclaimer of interest under that statute, the disclaimed property passes as if the disclaimant has predeceased the person creating the interest and, therefore, results in no inheritance tax to the disclaimant. IC 32-3-2-1 *et seq; Matter of Estate of Wisely* (1980), Ind.App., 402 N.E.2d 14. *See also* D. Falendar, *3A Henry's Probate Law & Practice,* Chap. 41, § 3, at 89, n. 17 (1990 Supp.), suggesting that in settlement of a will contest action, if a beneficiary disclaims all or a portion of his or her devise or bequest, the disclaimer should negate the beneficiary's tax liability regardless of its motivation. *But see Matter of the Estate of Fuerstenberg* (1983), 116 Ill.App.3d 11, 72 Ill. Dec. 83, 452 N.E.2d 15, (holding that redistribution of an estate pursuant to a settlement agreement did not change tax liability; settlement agreement and renunciation are mutually exclusive). *See also* IC 32-3-2-10, barring the right to disclaim after a contract to assign, convey, pledge, encumber or transfer the interest.

We recognize that, under the facts of this case, the distribution effected by the settlement agreement could have been accomplished by Mary's disclaimer of a partial interest in the trust; however, the settlement agreement submitted to the court referred only to the provisions of IC 29-1-9-1. Executor did not argue the agreement was in effect a disclaimer (pursuant to IC 32-3-2-1 *et seq.*) to the trial court or to this court. A question not presented to the trial court and, thus, not determined cannot be con-

We affirm the judgment of the probate court denying the petition to recalculate State inheritance tax.

CHEZEM and GARRARD, JJ., concur.

*Lepsch v. Marlowe* (1963), 135 Ind.App. 35, 189 N.E.2d 116.

sidered on appeal. *Hooten v. Alt* (1963), 244 Ind. 93, 191 N.E.2d 13. The theory, adopted by the parties and the trial court, and on which the case was tried, must be adhered to on appeal.