In the Matter of the Supervised
**ESTATE OF Leah YELEY,**
Deceased.

**Larry Yeley, Appellant,**

v.

**Timothy Purdom, as Personal
Representative of the Estate
of Leah Yeley, Appellee.**

No. 27A02–1103–ES–456.

Court of Appeals of Indiana.

Dec. 29, 2011.

---

Randall V. Sorrell, Sorrell, Hamilton & Mastin, Fortville, IN, Attorney for Appellant.

Jay Curts, Blake N. Shelby, Coots, Henke & Wheeler, P.C., Carmel, IN, Martin A. Harker, Rebecca L. Loeffler, Riley, Harker & Certain, Marion, IN, Josef D. Musser, Spitzer, Herriman, Stephenson, Holderead, Musser & Conner, LLP Marion, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Larry Yeley ("Larry") appeals the denial of his motion to correct error, which challenged a probate court order approving a settlement agreement reached pursuant to the adjudicated compromise of

controversies provisions of the Indiana Probate Code.[1] We reverse and remand.

## Issues

Yeley presents three issues for review, which we consolidate and restate as two:

I. Whether the probate court erroneously concluded that Yeley lacks standing to contest the settlement agreement; and

II. Whether Yeley may participate in a will contest he did not initiate.

## Facts and Procedural History

On January 26, 2007, Leah Yeley ("Leah"), aged ninety-eight, died testate. She was survived by two adult daughters, Gloria Tinsley ("Tinsley") and Leah Willarose Parson ("Parson"), and two adult sons, Larry and Jimmie Yeley ("Jimmie"), the latter of whom is disabled.

On March 20, 2007, Timothy Purdom ("Purdom") was appointed the Personal Representative of the Estate of Leah Yeley ("the Estate"). Purdom petitioned for probate of Leah's Last Will and Testament dated August 2, 1999. Purportedly, that will provided $1.00 each to Larry and Parson, with the explanation that the siblings had already received substantial assets.[2] Jimmie was the beneficiary of a trust and Tinsley was the primary beneficiary of the remaining estate. Leah's nephew, John Rockey ("Rockey"), was to receive Hamilton County farmland, and Larry's daughter, Misty Crull ("Crull"), was to receive eighty acres in Grant County and some stock.

On March 29, 2007, Purdom petitioned to recover estate assets from Parson. On April 5, 2007, Parson filed her "Complaint for Action to Resist Probate of Will and Contest Will." (App.87.) Parson averred that Leah had executed a newer Last Will and Testament, dated April 30, 2003, and had contemporaneously executed a revocable living trust. Parson further averred that Leah had amended her original trust on October 8, 2005. The 2003 will and trust, as amended, specifically disinherited Tinsley. Larry was to receive a specific bequest of $5,000. Jimmie was to benefit from $155,000 held in trust, while Parson was the sole beneficiary of the residuary of the trust estate.

Parson sought to remove Purdom as the personal representative of the 1999 will and accordingly named him as a party defendant. She also named as party defendants herself and the other beneficiaries named in the 1999 will, specifically, Tinsley, Jimmie, Crull, Rockey, and Larry.

On November 28, 2007, Crull filed her "Complaint to Contest Trust," naming as defendants the beneficiaries of the 1999 will and the additional beneficiaries of the 2003 trust, specifically, Purdom, Jared Purdom, Koren Purdom, Nancy Gore, Eric Yeley, Douglas Parson, Deanna Reising and Jill Milligan. (App.48.) Crull alleged that Leah had suffered a stroke in 2002 and thereafter had exhibited indications of dementia and paranoia. Crull averred that Leah had lacked capacity to execute the 2003 testamentary documents, and that Parson had exerted undue influence and diverted assets for her own benefit. In addition to seeking invalidation of the 2003 will and trust, Crull requested an

---

1. Ind.Code § 29–1–9–1 *et seq.*

2. Allegedly, this provision is consistent with that of Leah's 1995 will. No 1995 will has been offered for probate. Various documents, summaries, or purported exhibits appear in the parties' appendices, but were not offered into evidence at the probate hearing of February 25, 2000, for which we have been provided a transcript. The only evidentiary exhibits offered at that hearing are the settlement agreement and the mediation sign-in sheet.

accounting and sought Parson's disgorgement of real estate, stocks, mutual funds, and cash.

Mediation in 2008 was unsuccessful. After several settings and withdrawals of trial dates, and fruitless settlement negotiations, on January 31, 2011, the probate court entered an order requiring all interested persons to appear for mediation on February 24, 2011. The parties were also ordered to appear for a hearing on the following day, if they were unable to reach a settlement.

On February 25, 2011, the Guardian of the Estate of Jimmie Yeley appeared for hearing and filed a written motion for approval of a settlement agreement. The motion advised that "the parties represented by counsel reached a settlement agreement" pursuant to the Adjudicated Compromise Statute, Indiana Code § 29–1–9–1 et seq. (App.36.) An attached Settlement Agreement was signed by Crull, Tinsley, Purdom, Parson, their attorneys, and representatives of Jimmie, Reising, and Milligan. Rockey and Larry did not sign the Settlement Agreement.

At the outset of the hearing, the probate court expressed its understanding that Larry was the sole individual objecting to the settlement[3] and observed that the legal issue presented was "whether or not he's an interested party who has standing to object." (Tr. 4.) Larry appeared pro-se and described his objection under oath:

> Your Honor, I object to everything—the whole deal yesterday. I, I've been left out. I've been left, I, I want my share of the estate. I want time to hire an attorney in this to represent me, and I thought maybe things were gonna go a

little bit better, but I, I'm just not happy.

(Tr. 5.) After hearing testimony from Parson that she had given Larry $5,000, and hearing argument of counsel, the probate court took the matter under advisement. On February 28, 2011, the probate court entered its order approving the settlement agreement, stating in relevant part:

> In the Estate of Leah Yeley, there has been a good faith controversy as to the distribution of her estate.
>
> The Court finds that the effect[s] of the agreement proposed are just and reasonable.
>
> The Court finds that Larry Yeley is not an interested person in this matter, and even if he were to be considered an interested person, his interest is already represented by either the Personal Representative, Timothy Purdom, or the Trustee, Willarose Parson. The Court also finds that Larry Yeley has already received the maximum benefit under any of the testamentary documents currently before the Court, namely the 1999 Will of Leah Yeley, the 2003 Trust of Leah Yeley, and the 2005 Trust Amendments.
>
> The Court finds that Larry Yeley has failed to timely file a claim in this case to contest the 1999 Will of Leah Yeley on or before June 20th, 2007. The Court also finds that Larry Yeley has failed to file an action to resist the probate of the 1999 Will or the Trust documents.
>
> The Court also finds that Larry Yeley is barred by the doctrines of equitable estoppel, waiver, and laches from objecting to the terms of the settlement agreement.

3. No evidence or argument was offered with regard to the omission of Rockey's signature

on the settlement agreement.

The Court finds that the interested parties required to sign the settlement agreement have in fact signed and approved the settlement agreement.

The Court now orders the property of the Estate of Leah Yeley to be distributed pursuant to the terms of the Settlement Agreement.

(App.35.) On March 25, 2011, Larry, by counsel, filed his "Combined Motion to Correct Errors and Motion for Leave to Become a Party Plaintiff." (App.31.) Larry asserted that, had the will contests been successful, Leah would have died intestate and Larry would have been entitled to a one-fourth share of her estate. The motions were summarily denied. This appeal ensued.

## Discussion and Decision

### I. Approval of Adjudicated Compromise Agreement

▆▆ Larry appeals from the denial of a motion to correct error. We review a trial court's decision on a motion to correct error for an abuse of discretion. *Knowledge A–Z, Inc. v. Sentry Ins.,* 891 N.E.2d 581, 584 (Ind.Ct.App.2008), *trans. denied.* An abuse of discretion occurs when the decision is against the logic and effect of the facts and circumstances before the court, and inferences that may be drawn therefrom. *Id.*

▆▆ Whether Larry is an interested party requires our examination of Chapter 9 of the Probate Code, the Adjudicated Compromise of Controversies provisions. When deciding questions of statutory interpretation, appellate courts need not defer to a trial court's interpretation of the statute's meaning. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001).

Indiana Code Section 29–1–9–1 provides for compromise of any contest or controversy as to:

(a) Admission to probate of any instrument offered as the last will of any decedent,

(b) The construction, validity or effect of any such instrument,

(c) The rights or interests in the estate of the decedent of any person, whether claiming under a will or as heir,

(d) The rights or interests of any beneficiary of any testamentary trust, or

(e) The administration of the estate of any decedent or of any testamentary trust.

Accordingly, "the compromise statute is broader than the will contest statute in that it provides for the settlement of issues that are not involved in determining the validity of the will." *In re the Estate of McNicholas,* 580 N.E.2d 978, 982 (Ind.Ct. App.1991), *trans. denied.* "Upon the execution in writing of an agreement *by all parties interested in the will,* the parties may submit their agreement to the court for approval." *Id.* (emphasis added.)

Section 29–1–9–2 provides:

(a) The terms of the compromise shall be set forth in an agreement in writing *which shall be executed by all competent persons having interests or claims which will or may be affected by the compromise,* except those who may be living but whose present existence or whereabouts is unknown and cannot after diligent search be ascertained.

(b) Any interested person may then submit the agreement to the court for its approval and for the purpose of directing the agreement's execution by the personal representative of the estate, by the trustees of ev-

ery testamentary trust which will be affected by the compromise, and by the guardians of the estates of minors, of incapacitated persons, of unborn and unascertained persons, and of persons whose present existence or whereabouts is unknown and cannot after diligent search be ascertained, who might be affected by the compromise.

(c) IC 29–1–1–20 applies if there is any person who, if living, has an interest which may be affected by the compromise, but whose present existence or whereabouts cannot after diligent search be ascertained, or who is a minor or incapacitated and has no guardian of the estate, or if there is any future contingent interest which might be taken by any person not then in being and which might be affected by the compromise.

(emphasis added).

Indiana Code Section 29–1–9–3 sets out the authority of the trial court when approving such a settlement agreement:

Upon due notice, in the manner directed by the court, to all interested persons in being, or to their guardians, and to the guardians of all unborn persons who may take contingent interests by the compromise, and to the personal representative of the estate and to all trustees of testamentary trusts which would be affected by the compromise, the court shall, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries is just and reasonable, make an order approving the agreement and directing the fiduciaries and guardians ad litem to execute such agreement. Upon the making of such order and the execution of the agreement, all further disposition of the estate shall be in accordance with the terms of the agreement.

■ A court order approving a settlement agreement is not an adjudication of the issues of the litigation, but rather is an avoidance of adjudication. *In re McNicholas*, 580 N.E.2d at 982. "It is clear that there is no provision in the compromise statute authorizing a trial court to rule upon the merits of a contest or controversy or to invalidate a will." *Id.* The probate court may only (1) determine whether there is a good faith controversy and whether the effect of the agreement is just and reasonable; (2) approve the agreement; (3) order the fiduciaries and guardians ad litem to execute such agreement; and (4) order the property to be distributed to the parties according to the settlement agreement. Ind.Code § 29–1–9–3; *In re McNicholas*, 580 N.E.2d at 982.

Here, Larry did not sign the settlement agreement pursuant to Indiana Code Section 29–1–9–2. Nonetheless, the probate court concluded that Larry need not execute the settlement agreement because he had received the maximum allowable to him under either will or, alternatively, Larry's interests were represented by a fiduciary. We cannot agree.

At the outset, we observe the agreement reached by the parties (other than Larry and Rockey) is not an agreement to accept any of Leah's testamentary instruments—it is rather an agreement for independent division. At the time of the purported settlement, the 1999 will and the 2003 will and trust were each being challenged in litigation. Although it is true that the maximum provision for Larry under those instruments is $5,000, a settlement agreement need not have provided for a distribution consistent with only that amount.

■■ The compromise statute provides a mechanism for parties with an interest in

a decedent's estate to compromise their differences and obtain a court order approving such compromise which is then binding on the parties. *In re McNicholas,* 580 N.E.2d at 982. As such, the settlement agreement is a contractual agreement to transfer and distribute property among the parties so as to avoid litigation. There is no statutory requirement that the agreed-to distributions mirror one or more of the instruments in dispute. The compromise statute is not merely a mechanism for enforcement of existing will provisions; it permits living persons to agree to accept alternative provisions.

Furthermore, Larry personally appeared for mediation in response to a court order. No attorney, guardian, or other fiduciary purported to act on his behalf. Indeed, attorneys for the other siblings do not represent Larry's interests because those interests are adverse. The personal representative, appointed to execute the will provisions, could not be expected to advance Larry's interests because Larry can receive a larger or intestate share only if the will was not followed.[4] In the event of non-settlement and ensuing litigation resulting in invalidation of Leah's testamentary instruments, Larry would stand to inherit one-fourth of the estate, to the detriment of his siblings' shares.

The probate court simply imposed upon Larry the agreement reached by his siblings. This is in contravention of the compromise statute requiring a signature from each competent person having an interest or claim which will or may be affected by the compromise. As such, the trial court's approval of the settlement agreement was in error.

## II. Will Contest

■ Notwithstanding the unenforceability of the purported settlement agreement, we must decide whether Larry is prohibited from participation in the will contest. The other beneficiaries contend that, even if Larry was an interested party for purposes of settlement, he cannot pursue litigation because of the applicable statute of limitations, principles of waiver and estoppel, or accord and satisfaction.

■ First, the other beneficiaries argue that it was incumbent upon Larry to file a timely will contest. "An action to set aside the probate of an alleged will is purely statutory and can only be brought and successfully maintained in the manner and within the limitations prescribed by statute." *Johnson v. Morgan,* 871 N.E.2d 1050, 1052 (Ind.Ct.App.2007). Indiana Code Section 29–1–7–17 requires a challenge to be filed within three months. However, as Larry points out, "an interested party may join a will contest after the time for filing a will contest has lapsed, so long as the action being joined was initiated before the expiration of the statutory period." *Estate of Helms v. Helms–Hawkins,* 804 N.E.2d 1260, 1265 (Ind.Ct. App.2004), *trans. denied.*[5]

Here, however, Larry was a party to a will contest in progress. Conflicting wills had been presented for probate, along with trust documents. The validity of each of the testamentary instruments offered for probate was in controversy, and Larry was a named defendant in the litigation challenging those instruments. The probate court timely acquired jurisdiction over a will contest and Larry was not required to file a separate contest within in the three-

---

4. It is noteworthy that the issue of who should serve as personal representative was also in litigation.

5. Pursuant to Indiana Code Section 29–1–1–3(13), "interested persons" are "heirs, devisees, spouses, creditors or any others having a property right in or claim against the estate of a decedent being administered."

month period. *See Johnson*, 871 N.E.2d at 1055 (observing that a trial court acquired jurisdiction over a will contest with the filing of the complaint, and the right of action was saved as to all interested parties). However, because Larry's challenge is to the validity of each will, he should be named a plaintiff as opposed to a defendant in the will contest proceedings. *See id.* at 1053 (explaining that, although naming a person whose interest is in challenging a will as a defendant "at least superficially aligns her interests with those of the personal representative," joinder would confuse the fact-finder as to who is claiming the will is invalid).

Nonetheless, the other beneficiaries assert that equitable principles prohibit Larry's going forward with a challenge to Leah's testamentary instruments. They claim that Larry misrepresented a material fact to the detriment of the other beneficiaries. The crux of their argument is that Larry initially opposed a challenge to the 2003 will and trust, implicitly accepting its validity, and is thus estopped from assuming a stance contrary to that previously taken.[6] The argument presumes that Larry maintained his position until litigation was concluded by settlement and court order, causing irreparable harm to the others. However, the will contest was not properly concluded by settlement and is thus ongoing. The other beneficiaries offer no authority for the proposition that a litigant may not modify an argument or take a new position before the litigation culminates in a final judgment. We have discovered no such authority.

The brief record before us reveals no juncture at which Larry has affirmatively relinquished his right to litigate the validity of any or all of the testamentary documents at issue. The other beneficiaries claim that, in February of 2007, Larry received $5,000 from Parson as an estate distribution, apparently unaccompanied by an executed release of claim. They further insist that Larry has not restored the benefit received such that he may deny the validity of the document providing for the payment. *See Hight v. Carr*, 185 Ind. 39, 112 N.E. 881, 883 (1916) (discussing the principle that a recipient of compensation under a will is estopped from challenging the validity of the document without first restoring the benefit received thereunder).

Because it involves finding of facts, outside of our appellate role, we express no opinion as to whether an estate distribution in fact took place, was intended by the parties to constitute satisfaction of any and all claims Larry held against the estate, or whether such payment was restored. *See State Comp. Ins. Fund v. WallDesign, Inc.*, 199 Cal.App.4th 1525, 132 Cal.Rptr.3d 352, 355, n. 1 (2011) (reiterating, "if it is not in the record, it did not happen").

Reversed and remanded for further proceedings consistent with this opinion.

BAKER, J., and DARDEN, J., concur.

---

6. On December 13, 2007, in the matter of Misti Crull v. Leah Willarose Parson and Others, Cause No. 27D01–0711–MI–901, Larry filed a typewritten and signed letter stating "I disagree with *all* allegations set forth in this document." (Appellee's App. 1) (emphasis in original).