

**FILED**

May 27 2020, 9:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

Kristi L. Fox
Richard R. Fox
New Albany, Indiana

ATTORNEYS FOR APPELLEE
JEFF HALL

Crystal G. Rowe
Katherine E. Tapp
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEY FOR APPELLEE
DORIS ANDRES

Rachele L. Cummins
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Supervised Estate of Dorothy M. Hall (Decedent), Doloris Tilly, *Appellant*, <br><br> v. <br><br> Jeff Hall and Doris Andres, *Appellees*. | May 27, 2020 <br><br> Court of Appeals Case No. 19A-ES-1450 <br><br> Appeal from the Floyd Circuit Court <br><br> The Honorable Joseph P. Weber, Special Judge <br><br> Trial Court Cause No. 22C01-1411-ES-163 |

**Brown, Judge.**

Doloris Tilly appeals the trial court's interlocutory order of April 26, 2019, in the Supervised Estate of Dorothy M. Hall. We affirm.

*Facts and Procedural History*

In 1987, Frank Hall ("Frank") and Dorothy Hall ("Dorothy") owned certain real property on Old Vincennes Road in Floyds Knobs, Indiana.[1] Jeff Hall ("Hall") was Frank's son and Dorothy's stepson. Frank passed away in May 1987, and Dorothy became the sole owner of the Old Vincennes Road property and lived there. According to Hall, he and his father Frank raised cattle on the property and, after his father passed away, he continued to raise cattle and maintained the property and barn. Dorothy had two daughters, Doris Andres and Tilly.

On September 3, 2008, Dorothy executed a Last Will and Testament leaving the approximately eight-acre property on Old Vincennes Road to Hall and leaving the residue of her estate to Tilly. The will stated that Andres had received certain money from a joint inter vivos account and thus no provision was made for her. It named Tilly's husband, Thomas Tilly ("Thomas"), as the executor of the estate and Hall as an alternate executor. Dorothy also signed a power of attorney appointing Tilly and Thomas as her attorneys in fact.

---

[1] According to Jeff Hall, his father Frank and his mother purchased real property in 1955, his parents were later divorced, Frank married Dorothy in 1963, and the property was placed in Frank and Dorothy's names in 1971. Frank and Dorothy conveyed about three acres of the property to Hall's brother and about three acres of it to Hall, and retained and lived on the remaining property of approximately eight acres.

[4] On March 5, 2010, Dorothy signed a quitclaim deed conveying the Old Vincennes Road property to Tilly.[2] Dorothy passed away on October 25, 2014. On November 3, 2014, Andres filed a petition for supervised administration requesting that she be appointed as the personal representative of the estate.

[5] Hall received a letter dated November 4, 2014, from Tilly and Thomas's counsel addressed to him and Andres stating: Dorothy had transferred her real estate to Tilly on March 5, 2010, pursuant to enclosed deeds; Dorothy's other assets were held jointly with Tilly and passed directly to her as a matter of law; pursuant to Dorothy's September 3, 2008 will, all of her tangible property passed to Tilly; and thus it was not necessary to open a probate estate for Dorothy unless additional assets were discovered.

[6] On November 7, 2014, Tilly filed an objection stating that she lived with Dorothy for several years before her death and was familiar with Dorothy's assets and that Dorothy had executed a will naming Thomas as the personal representative of her estate. On November 24, 2014, counsel for Hall filed an appearance. On December 2, 2014, the court issued an order appointing Thomas as the personal representative of Dorothy's estate.

[7] On December 10, 2014, Andres filed a "Verified Petition to Contest Will" requesting that the purported will be declared invalid and alleging that Dorothy was of unsound mind and she was under the undue influence of Tilly and

---

[2] On the same day, Dorothy signed a quitclaim deed conveying a property on Ekin Avenue to Tilly.

Thomas. The petition stated Hall and Tilly were joined in the action because they were beneficially interested in the purported will as devisees. On December 17, 2014, Andres filed a Verified Petition to Set Aside Deeds which alleged: Dorothy previously owned the Old Vincennes Road parcel and a rental home on Ekin Avenue; Dorothy executed quitclaim deeds on March 5, 2010, conveying both parcels to Tilly; and Dorothy was of unsound mind, suffering from dementia, and under undue influence and duress at the time of the execution of the deeds. She requested the deeds be declared invalid and the real estate be deemed part of the estate.

On January 2, 2015, Thomas filed a motion to resign as personal representative and to appoint a special administrator which stated Tilly, Andres, and Hall were all interested parties and that they should equally share the fees of the special administrator. The motion stated Tilly and Thomas resided in the residence at the Old Vincennes Road property and requested an order that they could continue to live there rent free.

On January 9, 2015, the court entered an Agreed Order Appointing Special Administrator. The Agreed Order defined Tilly, Andres, and Hall as "Interested Parties," appointed a special administrator, and ordered that the Interested Parties share equally in the fees of the special administrator and that Tilly and Thomas could continue to reside rent free in the residence and would pay all expenses for maintenance, insurance, utilities, and taxes while residing there. The Agreed Order was signed by counsel for Tilly, Andres, and Hall.

[10] An entry in the chronological case summary dated November 6, 2015, states that a conference was held at which counsel for Andres, Tilly, and Hall were present and that Tilly was authorized to replace the HVAC system in the home on Old Vincennes Road and could seek reimbursement from the estate. A bench trial was eventually scheduled for February 6, 2017. On January 20, 2017, Hall filed a motion for continuance stating he had not received certain requested discovery. Also on that date, Hall and Andres filed a joint motion for mediation. Tilly and Thomas objected to the motions.

[11] On January 31, 2017, the court issued an order stating it held a telephonic conference with all counsel participating, counsel for Hall and Andres proposed that their respective clients pay for the cost of mediation, and the requested discovery had relevance to the issues to be heard at trial and was apparently available from non-parties. The court granted Hall's motion to continue and found that the validity of Dorothy's will and her deeds were in dispute and that "[t]he interests of all three (3) parties are very much at stake in this case and such interests [are] substantial." Appellant's Appendix Volume II at 169. The court ordered that the parties participate in mediation, that Hall and Andres pay the cost of mediation, that supplemental discovery requests may be made until February 20, 2017, and that responses were due within twenty days thereafter.

[12] On March 14, 2017, a mediator's report was filed stating that mediation occurred on March 9, 2017, that all parties were present and represented by counsel, and that mediation was unsuccessful. On March 15, 2017, Hall's

counsel filed a motion for extension of time stating that Tilly had served a request for admissions on or about February 21, 2017, while he was out of the state, the answers were due, and he was requesting until April 1, 2017 to file responses.

[13] On March 17, 2017, Tilly and Andres filed a Motion to Withdraw Petitions to Contest Will and Set Aside Deeds and Joint Motion to Dismiss Any and All Claims (the "Motion to Dismiss"). The Motion to Dismiss stated that Tilly and Andres had reached a settlement of the claims made by Andres and that they requested the dismissal with prejudice of all claims in the estate. A minute entry stated that Hall's counsel was granted fourteen days from the date of the filing of the Motion to Dismiss to file a response.

[14] On March 31, 2017, new counsel for Hall filed an appearance and filed a response to the Motion to Dismiss which stated that Dorothy signed her will in 2008, her mental and physical health deteriorated in 2009, she was diagnosed with Alzheimer's in February 2010, and that she purportedly signed a quitclaim deed on March 5, 2010, transferring the Old Vincennes Road property to Tilly. Hall argued that, throughout the course of the matter, the property was treated as property of the estate and pointed to the November 6, 2015 entry authorizing Tilly to replace the HVAC system in the home and seek reimbursement from the estate, Tilly's discovery upon him, and his agreement to the appointment of a special administrator. He asserted the court should not dismiss the claims based on Tilly's and Andres's secret agreement which did not account for his interest in the property and the request to set aside deeds.

[15]     On April 6, 2017, Hall filed an affidavit in support of his response opposing the Motion to Dismiss. Paragraph 4 of the affidavit stated: "Dorothy Hall represented to me on numerous occasions that she wanted me to have the Property, as it belonged to my family and she wanted me to be able to continue to raise my cattle close to my home as I had done for decades." Appellant's Appendix Volume III at 43. Hall also stated in the affidavit that: he did not know, prior to Dorothy's death, of her alleged conveyance of his family's farm on Old Vincennes Road; Tilly and Thomas did not inform him that Dorothy had transferred the property to them or question his presence on the property until he received the November 4, 2014 letter; when speaking with him about the property, Tilly and Thomas always acted as if the property belonged to Dorothy and Hall's family; and that, until Dorothy's death, Tilly and Thomas always referred to the property as "mother's property" or "mother's house." *Id.* at 44.

[16]     On April 14, 2017, Tilly filed a reply arguing Hall's claim that the 2010 deed be set aside was time-barred. Also on that date, she filed a motion to strike Hall's April 6, 2017 affidavit, arguing the affidavit was untimely and violated the Dead Man's Statutes at Ind. Code §§ 34-45-2-4 and -5. She also filed a Motion to Strike Jeff Hall's Discovery Responses and Certify Admissions which stated: the court provided the parties twenty days to respond to discovery requests; she served requests for admissions on Hall on February 20, 2017; he moved for an extension on March 15, 2017; he served answers to her requests which included

a number of denials on March 31, 2017; his answers should be stricken from the record; and her requests for admissions should be deemed admitted.

[17] On July 19, 2017, Hall filed a motion for leave to intervene in the petition to set aside deeds or be joined as an indispensable party ("Motion to Intervene"). He argued that the agreement between Andres and Tilly failed to account for his interest, the validity of Dorothy's will and deeds were in controversy, and that any approval of the agreement would contravene the compromise statute. He argued that an interested party may join a will contest after the time for filing a will contest had lapsed so long as the action being joined was initiated before the expiration of the statutory period, that for the same reasons an interested party may join a timely petition to set aside deed, and that he met the requirements to intervene in the petition to set aside the deed.

[18] In an entry dated October 17, 2018, the court denied Tilly and Andres's Motion to Dismiss and granted them thirty days to respond to the pending motions. On November 17, 2018, Tilly filed a memorandum opposing Hall's Motion to Intervene.

[19] On March 13, 2019, the court held a hearing. Tilly's counsel requested that Hall's April 6, 2017 affidavit be struck and argued it was untimely and violated the Dead Man's Statutes. Hall's counsel argued the affidavit was not offered as proof for trial but to show Hall's interest in the matter and in support of his request to intervene and requested that the affidavit be considered for that limited purpose, and the court stated it would allow the affidavit for the limited

purpose requested. Tilly's counsel then argued Hall's responses to her requests for admissions were untimely and her requests were deemed admitted and asked the court to certify the admissions and strike Hall's responses. Hall's counsel noted the timeline and that the issue arose with prior counsel, argued Tilly was not prejudiced by the delay and the requests related to issues that were central to the case, and requested the court to allow Hall's responses to stand or, if the requests were deemed admitted, to allow their withdrawal and amendment. The court found the responses were central to issues which were the crux of the case and denied Tilly's request to strike.

[20] With respect to the assertion Hall did not file a claim, Hall's counsel argued that it reflected a misunderstanding of the probate process, the statute to which Tilly and Andres referred related to liabilities of the decedent, Dorothy did not owe her children or Hall anything while she was alive, none of the issues raised by the parties could be described as a claim, and that he had never in his career filed a claim on behalf of a beneficiary solely as to their interest as a beneficiary.

[21] The court stated, "if I went to court and [the court] ordered me to mediation and ordered me to pay for part of the mediation and recognized me as a party, I think I would leave with the impression that I was already in rather than out," "I think . . . it was reasonable for him to presume that he was already participating as an interested party," and "I don't think it's possible to determine the wishes of Dorothy Hall and the appropriate outcome of this estate case without Mr. Hall being allowed to participate, and so I'm going to allow him to participate." *Id*. at 30-31. Tilly's counsel requested that the court

strike Hall's cross-claim, Hall's counsel noted the cross-claim was tendered as a proposed document and was not filed, and the court granted the request.

[22] On April 26, 2019, the court issued an order denying Tilly's motion to exclude Hall's discovery responses; denying Tilly's motion to strike Hall's affidavit; and granting Hall's Motion to Intervene. It certified the order for interlocutory appeal.

## *Discussion*

[23] Tilly appeals the April 26, 2019 order. She argues the trial court should have denied Hall's Motion to Intervene as untimely under Ind. Code § 29-1-14-1, and that this Court should "find that the settlement agreement between the only two parties actively litigating the case is valid and enforceable." Appellant's Brief at 29. She also argues the trial court should have granted her requests to strike Hall's affidavits and his responses to her request for admissions. Andres filed a brief agreeing with Tilly's arguments.

[24] Hall responds that he is not a claimant under Ind. Code § 29-1-14-1, that he is a devisee and an interested party, and the settlement agreement between Tilly and Andres was statutorily invalid. He notes that he retained counsel at the outset of the proceedings in 2014, engaged in discovery, attended hearings and mediation, and paid his share of the special administrator and mediator fees. He argues the court did not abuse its discretion in considering his June 12, 2017

affidavit or in denying Tilly's motion to strike his responses to her requests for admissions.[3]

## A. *Hall's Affidavits*

To the extent Tilly and Andres argue the trial court improperly considered Hall's affidavits, we note that Tilly's April 14, 2017 motion to strike requested the court to strike Hall's April 6, 2017 affidavit in support of his opposition to the Motion to Dismiss, that the court later denied the Motion to Dismiss, and that Tilly does not argue that she filed a motion to strike Hall's June 12, 2017 affidavit which was attached to his Motion to Intervene. Moreover, the June 12, 2017 affidavit did not include the statement found in paragraph 4 of the April 6, 2017 affidavit regarding Hall's conversations with Dorothy before her death, the other statements in the affidavit relate to facts to which Hall, Tilly, and Andres could present evidence, and the trial court noted its limited consideration of the affidavit.[4] Reversal on this basis is not warranted.

---

[3] Tilly also argues the trial court indicated at the March 13, 2019 hearing that it granted her motion to strike Hall's cross-claim but that its April 26, 2019 order failed to reflect that ruling. Hall notes the proposed cross-claim was never filed but merely submitted as an exhibit to his Motion to Intervene and thus "there was nothing for the probate court to 'strike.'" Appellee Hall's Brief at 15 n.5. We find below that Hall has an interest in the estate and the proceeding related to the validity of Dorothy's March 2010 deed transferring the Old Vincennes Road property to Tilly. Remand on this issue is not warranted.

[4] *See Johnson v. Estate of Rayburn*, 587 N.E.2d 182, 184-185 (Ind. Ct. App. 1992) (holding the Dead Man's Statutes require that "when the lips of one party to a transaction are closed by death, the lips of the surviving party are closed by law," "[t]he application of the statute is limited to circumstances in which the decedent, if alive, could have refuted the testimony of the surviving party," and the statutes apply "only where the claimant is prepared to testify as to matters or transactions concerning the decedent, and not merely as to matters that occurred while the decedent was alive") (quoted with approval in *Taylor v. Taylor*, 643 N.E.2d 893, 896 (Ind. 1994)), *superseded by statute on other grounds as recognized in Gipperich v. State,* 658 N.E.2d 946

B.    *Requests for Admissions*

As for Tilly's requests for admissions, Ind. Trial Rule 36 provides that a matter for which an admission is requested "is admitted unless, within a period designated in the request, not less than thirty [30] days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection . . . ." Ind. Trial Rule 36(B) permits the withdrawal of admissions and provides "the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." "As used in Rule 36(B), the word 'prejudice' does not mean that the party who has obtained the admissions will lose the benefit of the admissions; rather, it means that the party has suffered a detriment in the preparation of his case." *Costello v. Zavodnik*, 55 N.E.3d 348, 352-353 (Ind. Ct. App. 2016) (citation and internal quotation marks omitted) ("Zavodnik would suffer no such detriment. The matter has not yet been set for trial, Zavodnik still has time to prepare his case, and there is no evidence that he has relied on

(Ind. Ct. App. 1995); *see also Nichols v. Estate of Tyler*, 910 N.E.2d 221, 227 (Ind. Ct. App. 2009) ("Evaluating mental capacity to contract for the sale of real property is closely akin to evaluating the mental capacity necessary to make a will"); *Estate of Verdi ex rel. Verdi v. Toland*, 733 N.E.2d 25, 26 n.1 (Ind. Ct. App. 2000) (noting a testator's soundness of mind is an exception to the application of the Dead Man's Statute); *Lee v. Schroeder*, 529 N.E.2d 349, 353 (Ind. Ct. App. 1988) (recognizing an exception regarding a testator's soundness of mind) (listing cases), *reh'g denied, trans. denied*.

Costello's admissions in a way that would impair his ability to prepare his case."), *reh'g denied*. We review the trial court's determination only for abuse of discretion. *Id*. at 352. Here, the trial court was able to consider the extent of Hall's delay in filing responses, the relative timing of his obtaining new counsel, the extent to which the requests related to central issues in the case, and the extent to which Tilly suffered a detriment in preparing her case. According to her motion to strike, Tilly served her requests on Hall on February 20, 2017, he had twenty days to respond, and he served his responses on March 31, 2017. Under these circumstances we find no abuse of discretion.

C. *Hall's Motion to Intervene*

[27] We turn to the trial court's order granting Hall's Motion to Intervene. Indiana's probate code includes a definitions section. According to Ind. Code § 29-1-1-3(a), "claims" include "liabilities of a decedent which survive, whether arising in contract or in tort or otherwise, expenses of administration, and all taxes imposed by reason of the person's death," and "claimant" means "a person having a claim against the decedent's estate as described in IC 29-1-14-1(a)." Ind. Code § 29-1-1-3(a)(2) and -3(a)(3). The term "devise," when "used as a verb, means to dispose of either real or personal property or both by will," and the term "distributee" includes "those persons who are entitled to the real and personal property of a decedent under a will." Ind. Code § 29-1-1-3(a)(7) and -3(a)(9). Further, the term "interested persons," which sweeps more broadly, includes "heirs, devisees, spouses, creditors, or any others having a property right in or claim against the estate of a decedent being administered,"

and "[t]his meaning may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved." Ind. Code § 29-1-1-3(a)(15).

[28] With respect to Tilly's and Andres's assertion that Hall was required to file a claim under Ind. Code § 29-1-14-1 and failed to timely do so, Ind. Code § 29-1-14-1 provides that "claims" against an estate are barred unless filed within certain periods. *See* Ind. Code § 29-1-14-1(d) ("All claims barrable under subsection (a) shall be barred if not filed within nine (9) months after the death of the decedent."). However, as the definitions above reflect, not all interested persons are claimants for purposes of Ind. Code § 29-1-14-1. The term "claims" in the statute includes "liabilities of a decedent which survive, whether arising in contract or in tort or otherwise." Ind. Code § 29-1-1-3(a)(3). *See In re Lambert's Estate*, 116 Ind. App. 293, 300-301, 62 N.E.2d 871, 873 (1945) (holding a proceeding to show proof of heirship and an interest in the decedent's estate was not a claim against the estate). There is no question that Hall has not alleged the existence of a liability of Dorothy which survived her death. We cannot say that Ind. Code § 29-1-14-1 requires reversal.

[29] We turn to whether Hall was a person with an interest in the estate and the proceeding to set aside the March 2010 deeds. Ind. Code § 29-1-9-1 provides for the compromise of any contest or controversy as to the rights or interests in the estate of the decedent of any person claiming under a will or as to the

administration of the estate of a decedent.[5] The compromise statute "provides a mechanism for parties with an interest in a decedent's estate to compromise their differences and obtain a court order approving such compromise which is then binding on the parties." *Estate of McNicholas v. State*, 580 N.E.2d 978, 982 (Ind. Ct. App. 1991), *trans. denied*. Ind. Code § 29-1-9-2 provides that "[t]he terms of the compromise shall be set forth in an agreement in writing which shall be executed by all competent persons having interests or claims which will or may be affected by the compromise . . . ." Ind. Code § 29-1-9-3 provides in relevant part that, upon due notice to all "interested persons," "the court shall, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries is just and reasonable, make an order approving the agreement . . . ." As noted, the term "interested persons" includes "heirs, *devisees*, spouses, creditors, or *any others having a property right in* or claim against the estate of a decedent being administered," and "[t]his meaning may vary at different stages and different

---

[5] Ind. Code § 29-1-9-1 provides:

The compromise of any contest or controversy as to:

> (a) admission to probate of any instrument offered as the last will of any decedent,
> (b) the construction, validity or effect of any such instrument,
> (c) the rights or interests in the estate of the decedent of any person, whether claiming under a will or as heir,
> (d) the rights or interests of any beneficiary of any testamentary trust, or
> (e) the administration of the estate of any decedent or of any testamentary trust,

. . . shall, if made in accordance with the provisions of this article, be lawful and binding upon all the parties thereto . . . ; but no such compromise shall in any way impair the rights of creditors or of taxing authorities.

parts of a proceeding and must be determined according to the particular purpose and matter involved." Ind. Code § 29-1-1-3(a)(15) (emphases added). *See In re Estate of Yeley*, 959 N.E.2d 888, 894 (Ind. Ct. App. 2011) (holding the trial court erred in approving an agreement reached by the appellant's siblings and not signed by the appellant where, in the event of non-settlement and the ensuing litigation resulted in the invalidation of the testamentary instruments, the appellant would stand to inherit one-fourth of the estate), *trans. denied*.

[30] Here, if the proceeding results in the invalidation of Dorothy's 2010 deed transferring the Old Vincennes Road property to Tilly, Hall would stand to receive the property. To the extent the agreement between Tilly and Andres was not executed by Hall and would affect his interest in the estate and proceeding, the agreement did not satisfy the requirements of the compromise statute. *See* Ind. Code § 29-1-9-2. Even assuming that, prior to his Motion to Intervene, Hall did not expressly request to join Andres's petition or file a separate motion to set aside the 2010 deeds, for the reasons below we are persuaded that he was not required to do so under the circumstances.

[31] In *Johnson v. Morgan*, Martha Dietrich passed away leaving her estate to her niece Ruth Ann Morgan. 871 N.E.2d 1050, 1052 (Ind. Ct. App. 2007). Two of Dietrich's nephews, Charles and John Wesson, filed a complaint to contest her will alleging she lacked the capacity to execute a will due to dementia and had been unduly influenced by Morgan. *Id*. Mary Johnson together with other nieces and nephews of Dietrich later filed a motion to intervene, which the court granted. *Id*. Morgan moved to dismiss Johnson's intervening complaint

on the basis that Johnson had filed her motion outside the statute of limitations for will contests, and the court dismissed Johnson from the lawsuit.[6]  *Id.*  On appeal, this Court held:

> [W]e note that Johnson filed her complaint as an intervening party, and therefore her complaint was not the initial complaint.  In *Estate of Helms v. Helms-Hawkins*, 804 N.E.2d 1260, 1265 (Ind. Ct. App. 2004), *trans. denied*, we concluded that "an interested party may join a will contest after the time for filing a will contest has lapsed, so long as the action being joined was initiated before the statutory period."  We relied in large part on *State ex rel. Matheny v. Probate Court of Marion County*, 239 Ind. 518, 159 N.E.2d 128 (1959), where our supreme court held that a necessary party could be added to a will contest after the expiration of the statutory time for filing such contest.  Our supreme court's ruling in *Matheny* was based in large part upon a passage from a nineteenth-century Indiana case addressing essentially the same issue:

>> Where a petition of [a will] contest is filed within the statutory period of limitation although only part of the persons interested are made parties thereto, *the right of action is saved as to all who are ultimately made parties*, notwithstanding some of them are not brought into the case until after the period of limitation has expired.  If any person interested appears, and in good faith files his petition for a contest, the statutes entitle him to a trial, and the verdict of a jury, touching the validity of the will, and that verdict will be binding upon all parties who may be before the court as such, at the time of its rendition.  *The interest of the parties is joint and inseparable.*  Substantially this is a proceeding *in rem,* and the court can not take jurisdiction of the subject-matter by fractions.  The will is indivisible, and the verdict of the jury either establishes it as a whole, or wholly sets it aside.  *To save the right of action therefore to one is necessarily to save*

---

[6] Ind. Code § 29-1-7-17 provides in part that "[a]ny interested person may contest the validity of any will in the court having jurisdiction over the probate of the will within three (3) months after the date of the order admitting the will to probate by filing in the same court, in a separate cause of action, the person's allegations in writing . . . ."

*it to all.* The case belongs to that class of actions where the law is compelled either to hold the rights of all parties in interest to be saved, or all to be barred. And it seems now to be quite well settled law, that the preference will in such cases be given to the right of action, and not to the right of limitation. The right to sue is a favored right and is guaranteed by constitutional provision while the right of limitation generally meets with more or less disfavor.

*Floyd v. Floyd,* 90 Ind. 130, 133-34 (1883) (citation omitted).

There has been no contention that the Wessons failed to file a complaint naming Morgan as the defendant within the three-month time frame. Consequently, the trial court acquired jurisdiction over the will contest with the filing of this complaint, and the right of action was saved as to all interested parties. Therefore, Johnson's status as a party to the proceeding is not defeated merely by virtue of the fact that she failed to properly obtain service within the three-month time period.

*Id.* at 1054-1055 (emphases added). The rationale in *Johnson* and the authority to which it cites supports the conclusion that, as a devisee who stands to receive the Old Vincennes Road property if Dorothy's 2010 deed is invalidated, Hall was not required to file a separate request to set aside the March 2010 deeds or join Andres's petition.

[32] In addition, the record reveals that Hall's counsel filed an appearance soon after the estate proceeding was initiated in 2014, and since then Hall has participated in the hearings, was ordered to pay a share of the special administrator and mediator fees, and requested and participated in mediation, all on the premise he had an interest in the estate and proceeding. The record also reflects that, prior to attempting to enter an agreement, Tilly and Andres treated Hall as having such an interest. Andres's 2014 petition contesting Dorothy's will

indicated that Hall was joined because he was beneficially interested as a devisee under the will, and her petitions to contest the will and to set aside the deeds were served on Hall. Thomas's 2015 motion to resign as personal representative stated that Tilly, Andres, and Hall were all interested parties. The court's January 9, 2015 agreed order defined Tilly, Andres, and Hall as "Interested Parties," ordered them to equally share in the fees of the special administrator, and was signed by counsel for all three parties. Appellant's Appendix Volume II at 108. Further, the court's January 31, 2017 order referred to Hall as an interested party and expressly found the validity of Dorothy's will and deeds were in dispute and "[t]he interests of all three (3) parties are very much at stake in this case and such interests [are] substantial." Appellant's Appendix Volume II at 169.

[33] Based upon the record, we affirm the trial court's April 26, 2019 interlocutory order.

[34] Affirmed.

Najam, J., and Kirsch, J., concur.