**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 13 2012, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DOUGLAS R. DENMURE**
Aurora, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOUGLAS R. DENMURE, PERSONAL REPRESENTATIVE OF THE ESTATE OF EUGENE D. TRESTER, DECEASED, | ) ) ) ) | |
| Appellant-Plaintiff, | ) ) | |
| vs. | ) ) | No. 49A02-1109-ES-905 |
| MICHAEL S. GRIDLEY, PERSONAL REPRESENTATIVE OF THE ESTATE OF ALICE F. GRIDLEY, DECEASED, | ) ) ) ) | |
| Appellee-Defendant. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49D08-0708-ES-38851

**March 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION[1]**

**KIRSCH, Judge**

---

[1] We note that the Appellant in this case has filed a request for publication of our opinion. Because we employ a *prima facie* standard of review, we decline to publish the opinion.

Douglas R. Denmure ("Denmure"), Personal Representative of the Estate of Eugene D. Trester, Deceased, on behalf of Edwin A. Gridley and Eugene D. Trester ("the Residuary Beneficiaries"), appeals from the trial court's order approving the personal representative's accounting, supplemental accounting, petition for order approving distribution and closing the Estate of Alice F. Gridley, Deceased ("the Gridley Estate"), and from the trial court's order denying Denmure's request for attorney fees associated with enforcement of a mediated settlement agreement ("the MSA"), without holding a hearing. Denmure, on behalf of the Residuary Beneficiaries, presents the following restated and consolidated issue for our review: Whether the trial court's order is contrary to the MSA entered into between the interested parties and approved by the trial court.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On July 14, 2008, the Residuary Beneficiaries, other interested parties, and the personal representative of the Gridley Estate, Michael S. Gridley ("Gridley"), entered into the MSA to resolve a cause of action separate from the administration of the Gridley Estate, but pertaining to disputes among them about the administration of the Gridley Estate. On October 2, 2009, Gridley, by counsel, filed a motion to approve the MSA with the trial court in the Gridley Estate cause of action. The trial court signed an order approving the MSA that same day.[2]

---

[2] The MSA was signed by all principal interested persons and all lesser interested persons except for one individual. The trial court's order approving the MSA acknowledged that fact and ordered only those who signed the MSA to carry out its terms.

The MSA identified certain specific expenses that were to be paid from the net proceeds from the sale of real estate, the primary asset of the Gridley Estate, and the distribution of the residual estate. In particular, the MSA included the following provisions:

6. The Personal Representative will pay the following sums from the Net Proceeds:

a. Funeral Expenses (Claim #1)……………………………..$7,926.70
b. Denmure guardianship attorney fees (Claim #2)……….$14,624.00
c. William Radez, Esq…………………………………………..$2,000.00
d. William Fatout, Esq…………………………………………..$7,000.00
e. Personal Representative Fee……………………………….$2,800.00
f. Advancements refund to Personal Representative………..$2.200.00
g. Inheritance Tax……………………………………………….TBD
h. Mediator fees above the $500 retainer paid by each of attorneys
   Fatout and Denmure……………………………………..TBD
j. Real Estate taxes on the Residence………………………...TBD
k. Real Estate insurance……………………………………..TBD
l. Ordinary and customary expenses of maintaining the residence
   prior to sale……………………………………………………TBD

7. Aside from the attorneys' fees to be paid from the Net Proceeds as identified in paragraph 6 immediately above, each party shall be individually responsible for the payment of any attorneys' fees to their respective attorney.

8. For purposes of this Agreement, the Net Proceeds and any and all other remaining sums held by the Estate after satisfying the amounts described in paragraph 6 above, shall be hereinafter referred to as the "Residual Estate". The Residual Estate shall be distributed one-third (1/3) to [Gridley], c/o William Fatout, and two-thirds (2/3) to Plaintiffs, c/o [Denmure].

*Appellant's App*. at 79. Paragraph 11 of the MSA provided that the parties would release and discharge each other from any disputes or claims as to all matters that were asserted or could have been asserted between the parties. Further, Paragraph 16 of the MSA provided that if any of the parties were required to initiate legal action to enforce the terms of the MSA, the

prevailing party or parties would be entitled to recover reasonable attorney fees from the non-prevailing party or parties.

On May 11, 2010, Gridley filed a verified closing statement with attachments pertaining to the Gridley Estate with the trial court. Among the proposed distributions was a $7,000.00 payment to Attorney William Fatout, a $2,356.00 payment to Attorney William R. Radez, Jr., and a $14,624.00 payment to Denmure. On June 24, 2010, Gridley filed an amended verified closing statement, containing the proposed distributions previously mentioned, and added a proposed distribution to Gridley of $7,501.60 as a personal representative fee.

On August 30, 2010, Denmure, on behalf of the Residuary Beneficiaries, filed an objection to the amended closing statement, arguing that the personal representative's fee should be $2,800.00 per the terms of the MSA, and not $7,501.60 as proposed in the amended closing statement. On October 1, 2010, an attorney for the Gridley Estate filed an amended Indiana inheritance tax return. In particular, Schedule F of that return included, in part, the following deduction entries:

> 2. Attorney William Fatout (See Mediation Order)    $7,000.00
> 3. Attorney William Radez Jr. (See Invoice)    $3,356.00
> 4. Michael S. Gridley-Personal Representative Fees    $3,518.00
>        (See Invoice)

*Id*. at 174.

On February 28, 2011, Denmure filed a request for additional attorney fees to be assessed against Gridley and the Gridley Estate's attorneys for failing to abide by the terms and conditions of the MSA. Denmure later filed a supplement and amendment to the

4

Residuary Beneficiaries' objection to the amended closing statement. The trial court took the pending matters under advisement.

On July 6, 2011, the trial court issued its order approving Gridley's amended closing statement. The trial court's order included the payment of $2,356.00 to Attorney William Radez, Jr., and for the payment of $7,501.60 to Gridley for "Personal Representative Fees/Real Estate Management Fees/Reimbursement of Costs & Expenses." *Id*. at 14. On July 19, 2011, the trial court denied Denmure's request for additional attorney fees without holding a hearing on the matter. Denmure filed a motion to correct error, which was denied by the trial court. Denmure now appeals.

## DISCUSSION AND DECISION

As an initial matter, we note that Gridley has failed to file a brief in this appeal. When the appellee has failed to submit a brief we need not undertake the burden of developing an argument on the appellee's behalf. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Instead, we will reverse the trial court's judgment if the appellant's brief presents a case of *prima facie* error. *Id*. *Prima facie* error is defined as, at first sight, on first appearance, or on the face of it. *Id*. Where an appellant has failed to meet this burden, we will affirm. *Id*.

Denmure argues that the trial court's order erroneously contains provisions contrary to those negotiated in the MSA. Indeed, our review of the MSA and the trial court's order reflect that additional payments to Gridley and an attorney of the Gridley Estate that were not provided for in the MSA were made possible by the trial court's approval of the amended closing statement. "Indiana strongly favors settlement agreements." *Georgos v. Jackson*,

5

790 N.E.2d 448, 453 (Ind. 2003). Further, it is well-established that if a party agrees to settle a pending action, but then refuses to abide by the settlement agreement, the opposing party may obtain a judgment enforcing the agreement. *Id*. "Settlement agreements are governed by the same general principles of contract law as any other agreement." *Id*.

Furthermore, Indiana Code section 29-1-9-1 provides in pertinent part for the compromise of any contest or controversy as to the administration of the estate of any decedent or of any testamentary trust. As we stated in *In Re Estate of Yeley*, 959 N.E.2d 888, 892 (Ind. Ct. App. 2011) (quoting *In Re the Estate of McNicholas*, 580 N.E.2d 978, 982 (Ind. Ct. App. 1991), "the compromise statute is broader than the will contest statute in that it provides for the settlement of issues that are not involved in determining the validity of the will." "Upon the execution in writing of an agreement by all parties interested in the will, the parties may submit their agreement to the court for approval." *Id*.

Indiana Code section 29-1-9-3 sets out the authority of the trial court in this situation as follows:

> Upon due notice, in the manner directed by the court, to all interested persons in being, or to their guardians, and to the guardians of all unborn persons who may take contingent interests by the compromise, and to the personal representative of the estate and to all trustees of testamentary trusts which would be affected by the compromise, the court shall, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries is just and reasonable, make an order approving the agreement and directing the fiduciaries and guardians ad litem to execute such agreement. Upon the making of such order and the execution of the agreement, all further disposition of the estate shall be in accordance with the terms of the agreement.

Thus, a trial court order approving a settlement agreement is not an adjudication of the issues of the litigation, but is a means of avoiding adjudication. *In Re McNicholas*, 580 N.E.2d at

6

982. The probate court is permitted to: (1) determine whether there is a good faith controversy and whether the effect of the agreement is just and reasonable; (2) approve the agreement; (3) order the fiduciaries and guardians ad litem to execute such agreement; and (4) order the property to be distributed to the parties according to the settlement agreement. Ind. Code § 29-1-9-3; *In Re McNicholas*, 580 N.E.2d at 982.

Therefore, based upon the facts presented and our review of the pertinent statutes and case law, we conclude that Denmure has established *prima facie* error. We reverse the trial court's order and remand this matter for further proceedings, including a consideration of Denmure's request for additional attorney fees pursuant to the terms of the MSA in order to enforce the terms of the MSA on behalf of the Residuary Beneficiaries.

Reversed and remanded.

BARNES, J., and BRADFORD, J., concur.